MICHAEL J. HEALY et al.

v.

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed December 21, 1898.*

1. CRIMINAL LAW—*when prisoner cannot claim right to discharge for want of prosecution.* Delay occasioned by the continuance of a criminal case by the consent of all parties, when called for trial within four months of the day of commitment, must be deemed as happening "on the application of the prisoner," within the meaning of the statute.

2. SAME—*common law methods cannot be followed if statute has prescribed others.* A court of general jurisdiction cannot resort to its inherent common law powers for the purpose of obtaining a jury for the remainder of the term after a challenge to the array has been sustained and the panel discharged, as the statute has pointed out a method to be pursued in such contingency.

3. SAME—*course to be followed in summoning special venire.* Sections 12 and 13 of the act on jurors (Rev. Stat. 1874, p. 632,) do not authorize the court, upon sustaining challenge to the array and discharging the panel, to order a special venire to be served by a special bailiff, in the absence of any objection by the parties to the service of the venire by the sheriff.

4. SAME—*purpose of Jury Commissioners act of 1897.* The purpose of the Jury Commissioners act of 1897 (Laws of 1897, p. 243,) is to place upon the list of eligible jurors, electors having the necessary qualifications for the discharge of their duties, and to so control their selection, not only for the regular panel but for the trial of each case, that the selection may not be influenced by interest.

5. SAME—*when course pursued in obtaining jury is ground for reversal.* Under section 4 of the Jury Commissioners act of 1897 relating to the method of securing juries, which provides that "if more jurors are needed during the term the court shall so certify, and they shall be drawn and summoned" as previously specified, it is reversible error for the court, in a criminal case, against objection, to order a special venire to be served by a special bailiff.

6. INSTRUCTIONS—*instructions should not assume disputed facts.* An instruction is erroneous which assumes the existence of a controverted question of fact.

7. SAME—*the instructions should not be argumentative or give undue prominence to evidentiary facts.* An instruction which is argumentative in form and effect, or which selects particular features of the testimony not conclusive in character but merely evidentiary, and directs the attention of the jury thereto, is erroneous.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

JOHN C. KING, GEORGE W. BROWN, and J. E. INGRAM, for plaintiffs in error.

E. C. AKIN, Attorney General, (CHARLES S. DENEEN, State's Attorney, HARRY OLSON, and HAYNIE R. PEARSON, of counsel,) for the People.

Mr. JUSTICE BOGGS delivered the opinion of the court:

At the July term, 1897, of the criminal court of Cook county the plaintiffs in error were convicted of the crime of manslaughter. This is a writ of error sued out to review the judgment of conviction.

On the 12th day of July, 1897, the plaintiff in error Moran presented a petition to the said criminal court of said Cook county, setting forth that in default of bail he was then confined in the common jail of said county to answer said charge; that he had been so confined in such jail continuously from and including the 17th day of February, 1897; that he had not been tried at any term of court commencing within four months of the date of his commitment to the said jail, and that the delay in placing him upon trial for said alleged criminal offense had not happened upon the application of the petitioner. The petition was verified by the affidavit of said plaintiff in error.

The statute upon which the petition is based is as follows: "Any person committed for a criminal or supposed criminal offense and not admitted to bail, and not tried at some term of the court having jurisdiction of the offense, commencing within four months of the date of commitment, * * * shall be set at liberty by the court, unless the delay shall happen on the application of the prisoner, or unless the court is satisfied that due exertion has been made to procure the evidence on the part of the People, and that there is reasonable grounds

to believe that such evidence may be procured at the next term, in which case the court may continue the case to the next term." (Starr & Curtis, 1896, chap. 38, par. 623, sec. 18.)

It is assigned as for error the court denied the prayer of the petition.

The statutes provide a term of the criminal court of Cook county shall be begun and holden on the first Monday of every month. (Rev. Stat. chap. 37, par. 53, p. 334.) Four terms of said court, viz., March, April, May and June, had intervened between the date of the commitment of the plaintiff in error Moran to the common jail, and the July term, to which the petition for discharge was presented. The June term, however, "commenced within four months of the date of commitment," and the statute does not purport to affect the power of the court to detain and try the plaintiff in error at any time during that term, though beyond the said period of four months. It appears from the record the cause against Moran and his co-defendant was set for hearing on the 28th day of June, 1897, being one of the judicial days of said June term, during which it was lawful to detain and try him, and that on that day the cause was, by consent of all the parties thereto and without objection on the part of any one, re-set, by agreement, to be tried on the 6th day of July, 1897. The statute, the benefit of which plaintiff in error invokes, is not operative if "the delay shall happen on the application of the prisoner." All the parties to the cause consented the case should not be heard on the 28th day of June, and agreed that the trial should be postponed and the cause re-set for trial on the 6th day of July. An order of the court was, however, necessary to make the agreement effective. In order to secure the approval of the court the agreement and desire of the parties must have been in some manner manifested to the court,—that is, the court must have been applied to, to sanction the postponement and re-setting of the case.

Delay thus occasioned must be deemed to have "happened on the application" of each and all of the parties to the proceeding. On the 6th day of July the cause was again continued, by agreement of all the parties, to July 12, 1897, and re-set for trial on the last named day. On the 12th day of July the plaintiff in error filed the petition for an order setting him at liberty. The prayer of the petition was properly denied.

On the 12th day of July, being one of the judicial days of the July term of said court, a challenge was presented to the array or regular panel of petit jurors, and such challenge was sustained. The court thereupon, upon its own motion, over the protest, objection and exception of both the plaintiffs in error, ordered that a special venire issue commanding that one hundred good and lawful men be summoned from the body of the county of Cook to serve as petit jurors on the trial of the cause, and on the motion of the State's attorney, over the objection of the plaintiffs in error, the court appointed one Frank G. Jackson a special bailiff to serve the venire, to which the plaintiffs in error also excepted. The venire was made returnable on the 14th day of the same month, on which day it was returned as having been duly executed. Counsel for plaintiffs in error entered a challenge to the array of jurors thus summoned, on the ground, among others, they were ordered, selected and summoned without authority of law. The challenge was overruled, and the plaintiffs in error preserved exceptions to such ruling. The parties were required to proceed to the selection of the jury for the trial of the cause out of the persons so summoned by said special bailiff by virtue of the special venire, to all of which the plaintiffs in error objected and entered exceptions. A jury not being obtained from the persons in attendance under the command of the said venire, on the motion of the State's attorney other venires were ordered to be issued, and were issued, commanding that other designated numbers of persons be summoned

from the body of the county, until, in all, seven venires had been issued and served. Each of these venires was ordered to be served by the said special bailiff, Frank G. Jackson. At all stages of these proceedings to procure the jury by summoning persons from the body of the county by the said special bailiff, acting under the authority of the venires issued by the court, the plaintiffs in error presented their objections to the court and challenges to the array, and, such objections and challenges being overruled, preserved exceptions thereto. Plaintiffs in error were required by the court, over their objections and exceptions, to proceed with the selection of a jury until a jury was obtained. The cause was heard by the jury, and a verdict returned finding plaintiffs in error guilty of manslaughter, and fixing their punishment at imprisonment in the penitentiary for a term of four years each.

We think the court erred in requiring the plaintiffs in error to submit their case to a panel of jurors to be selected from the persons brought into the court by the venires. When the challenge to the regular panel of jurors was sustained and the panel quashed, the necessity still existed for the attendance of a jury, to the end the court might proceed to dispose of the causes pending on the docket for hearing.

The duty and power of a court of general jurisdiction, when a challenge to the array or regular panel has been sustained and the panel discharged, has received the attention of this court in other cases. In *Stone* v. *People*, 2 Scam. 326, it was declared the court, in such exigency, possessed ample power to command the attendance of the requisite number of jurors for the trial and disposition of cases remaining upon the docket for decision, and expressly stated "that if it (the power) was not sufficiently conferred by statute it did exist at common law." In *Lincoln* v. *Stowell*, 73 Ill. 246, we said: "Had there been no provision in the statute for obtaining a jury, when, at the same time, the court was required to be held un-

til the business was disposed of, perhaps recourse might have been had to the common law power of the court for the purpose of obtaining a jury, as was done in *Stone* v. *People*, 2 Scam. 326. But in this case no such difficulty had arisen. A mode was provided by the statute by which a jury could be obtained."

It is thus seen that while the power which, under the doctrine of the common law, rested inherently in courts to provide juries in such emergencies is recognized as still existing in courts of general and original jurisdiction in our State, such power is subordinate to that, if any, conferred by the express provisions of the enactments of the General Assembly. In the absence of a statutory provision clothing the court with the necessary power the inherent power of the common law may be exercised, but if a statute points out the course to be pursued it is not to be departed from.

The importance of selecting persons to act as jurors who possess the requisite qualifications to enable them to intelligently and impartially consider and determine the civil and criminal rights and interests of litigants, and of removing it from the power of any litigant or any interest to participate in any way in the selection or choosing of persons to compose the panel of jurors, has long been a matter of general public concern, which has found expression in various enactments of the General Assembly framed for the purpose of avoiding the evils of former prevailing methods, and of procuring for this important public service only such persons as were fitted to discharge it intelligently and without the intervention of outside influences, or any character of prejudice or bias. This being true, the wisdom of the rule adopted by this court, that the method of selecting jurors which prevailed at the common law should only be resorted to in the absence of statutory directions as to the course to be pursued, is manifest. It then must be determined whether the statute in force at the time of the trial of

this cause invested the trial court with power to provide
a jury for the trial of the case, and, if such power was
conferred by statute, whether the directions of the stat-
ute were observed by the court.

Counsel for the People contend the jury in the case at
hand was summoned in accordance with the provisions
of sections 12 and 13 of chapter 78, entitled "Jurors."
Section 12 referred to, directs the steps to be taken in
order to secure a full panel of jurors at the opening of a
term, and provides that if a jury be needed for the trial
of a cause before a full panel has been obtained the court
shall order the sheriff to summon from the bystanders
a sufficient number of persons having the qualification
of jurors to fill the panel. Said section 13 relates to the
course to be pursued after a regular panel has been se-
cured but has been exhausted by challenges, sickness of
jurors, or otherwise, so that a trial panel for a pending
trial cannot be obtained from the regular panel, and the
provision of such section in such exigency is, that the
court shall direct the sheriff to summon a sufficient num-
ber of persons having the qualifications of jurors to fill
the regular panel, unless one of the parties to the cause
or trial shall object to the sheriff performing such duty,
and if such objection is made the court may appoint a
special bailiff. Counsel for the plaintiffs in error insist
that the enactment of the act of the General Assembly
entitled "An act to authorize judges of courts of record
to appoint jury commissioners," etc., in force in said Cook
county on the first day of July, 1897, expressly provided
the mode for the selection of the jury in the present case.
They further contend that the jury was not summoned
as authorized by said sections 12 and 13 of chapter 78
aforesaid, or either of them, but that, against their ob-
jections and over their protest, the court, instead of di-
recting the sheriff to execute the venire, as is the express
direction of each of said sections, appointed and author-
ized a special bailiff to perform that duty. They further

urge no objection was made to the sheriff as the officer to serve the venire by either party to the cause, and that the action of the court in appointing a special bailiff was in direct violation of the provisions of both of said sections 12 and 13.

The first section of the act entitled "An act to authorize judges of courts of record to appoint jury commissioners," approved June 9, 1897, and in force July 1, 1897, provides that in every county in this State which then contained or should hereafter contain more than one hundred thousand inhabitants, the judges of the several courts of record in such county, or a majority of them, should choose three competent and discreet electors to serve as jury commissioners; that said commissioners in such counties as then contained the required number of inhabitants (the county of Cook being one of such counties) should be chosen on the first Monday of July, 1897. Section 2 of the act provides that said commissioners, upon entering upon the duties of their office, and every four years thereafter, should prepare a list of all electors between the ages of twenty-one and sixty years possessing the necessary legal qualifications for jury duty, and should enter the name of each of such persons in a book or books to be kept for that purpose, and should enter opposite each name the age, occupation and residence (giving street and number, if any,) of such person, whether or not he was a householder residing with his family, and whether or not he was a freeholder. Section 3 of the act authorized the commissioners to appoint clerks and assistants, and invested the commissioners with certain powers, to enable them to obtain certain information that might be necessary to the discharge of their duties. Section 4 of the act is as follows:

"Sec. 4. The said jury commissioners shall, from time to time, select from said jury list the requisite number of names, which shall each be written on a separate ticket, with the age, place of residence and occupation of each,

if known, the whole to be put into a box to be kept for that purpose, and to be known as the jury box.   In like manner they shall select the necessary number of names from said jury list, which names shall each be written on a separate ticket, with the age, place of residence and occupation of each, if known, and put the whole into another box to be kept for that purpose, and known as the grand jury box.   The jurors so selected shall, as near as may be, be residents of different parts of the county, and of different occupations; and one or more of the judges of said court shall certify to the clerk of the court the number of jurors required at each term.   The said clerk shall then repair to the office of the jury commissioners, and in the presence of at least two of said commissioners, and also in the presence of the clerk of said commissioners, if there be one, proceed to draw at random from said jury box, after the same shall have been well shaken, the necessary number of names, and shall certify the same to the sheriff, to be by him summoned according to law.   *If more jurors are needed during said term the court shall so certify, and they shall be drawn and summoned as above provided forthwith:   Provided,* that it shall be the duty of said jury commissioners to have and maintain at all times in said jury box not less than fifteen thousand (15,000) names and in said grand jury box not less than one thousand (1000) names."

The remaining sections of the act relate to the manner of selecting grand juries, and to the compensation of the commissioners and their clerks and assistants.

This act became effective as law in Cook county on the first day of July, 1897, but under its provisions the jury commissioners could not be named and authorized to act until the first Monday of July, being the first day of the July term of said criminal court of Cook county.   But we need not follow the argument of counsel bearing upon the question whether it was practicable to secure a legal panel of petit jurors by virtue of the enactment to serve

at the opening of such July term, for the reason the question presented to us is whether its provisions were effective to enable the court to secure a jury on the 12th day of July. If it clothed the court with power to bring into court a legal panel of jurors to meet the exigency which existed because of the discharge of the regular panel, then the court should have secured a jury in accordance with its provisions.

Section 2 of the act provides for the preparation by the commissioners of a list of all electors in the county between the ages of twenty-one and sixty, and possessing the necessary legal qualifications for jury duty, and directs that such list shall also contain certain other information as to residence, etc., of electors. The act does not expressly declare what shall be necessary to qualify an elector for jury duty, but that such electors shall possess the necessary legal qualifications. Section 2 of the act concerning jurors, in force February 11, 1874, declares the qualifications of jurors, and it must be assumed that the words "necessary legal qualifications for jury duty," in section 2 of the Jury Commissioners act, relate to the qualifications prescribed by said section 2 of the general act on jurors. Section 4 of the Jury Commissioners act, which we have hereinbefore set out in full, contains all that is found in the act with reference to the matter of selecting names from the list to compose the regular panel of jurors at each term of the different courts in the counties where the law is in force, and of selecting others jurors, if others are needed, at any time during the continuation of a term. It provides that the commissioners shall select the necessary number of names from said jury list, which names shall be written on a separate ticket, with the age, place of residence and occupation, if known, and shall put such tickets in a box to be kept for that purpose, called the jury box; that the judges of the courts in the county shall certify to the clerk of the court the number of jurors required at each

term, and that the clerk shall repair to the office of the jury commissioners, and in the presence of at least two of the commissioners, and of the clerk of the commissioners, if there be one, shall draw at random from the said jury box, after the tickets shall have been well shaken, the necessary number of names. Said section also directs the course to be pursued if it shall be found necessary to procure other jurors during the term of court. The provision of the section in this respect is as follows: "If more jurors are needed during the term the court shall so certify, and they shall be drawn and summoned as above provided forthwith."

When the enactment is carefully considered it will be observed the chief design is to accomplish two purposes: First, to place upon the list of those who may be chosen and summoned to serve as jurors, the names of those electors, and of those only, who should possess the qualifications which the law-making power deemed necessary and requisite to the proper discharge of the duties of a juror; and second, to so control the selection from such list of the persons who should be summoned to render jury service that no interested person and no interest could in any manner participate in such selection, the ultimate design being to secure for the trial of causes qualified and impartial jurors, not only on the regular panel but in the trial of each particular cause. In *People v. Onahan,* 170 Ill. 449, we held the enactment a valid law. When the regular panel was quashed this law was in full force, and we find nothing in the record to indicate that it was not in actual operation. We cannot assume it was not, for that would be to presume that those upon whom the law imposed duties and conferred authority had ignored its provisions and refused to discharge official acts which it directed and authorized them to perform. This being true, the duty of the trial judge when the regular panel of the jury was quashed, was, it seems to us, clear. He should have certified, as authorized to do

by the fourth section of the act, that "more jurors were needed" in his court, and upon that certificate the necessary names should have been drawn from the jury box in accordance with the directions of the said section.

The insistence the course pursued by the court to bring a jury into court for the purpose of trying the cause is authorized by sections 12 and 13 of chapter 78, entitled "Jurors," hereinbefore set out, cannot be accepted. Neither of those sections authorizes the court to clothe a special bailiff with power to select and summon persons into court to be tendered to litigants as jurors, unless one or the other of the parties to the cause objects to the exercise of such power by the sheriff. In this case no objection was made to the sheriff, and the contingency upon which the sections in question authorized the appointment of a special bailiff did not occur.

It is urged by counsel for the People that the venires were directed in the usual manner, "to the sheriff of said county," and were returned by Jackson, as deputy sheriff. We find in the record an order made by the court with reference to who should have power to serve the venires and in what capacity such person should act. The order is as follows: "On motion of Charles S. Deneen, State's attorney, it is ordered by the court that Frank G. Jackson be appointed special bailiff to serve special venires in this cause." "The court of its own motion doth order that a special venire issue out of this court commanding special bailiff Frank G. Jackson to summon one hundred good and lawful men from the body of Cook county to serve as petit jurors, returnable at ten o'clock Wednesday morning." It is true that, notwithstanding the express order of the court "a special venire issue out of this court commanding special bailiff Frank G. Jackson to summon one hundred good and lawful men," etc., the clerk used a printed form of venire intended to be used when the sheriff should be directed to summon a special jury, and also true that in making the return upon the

same the special bailiff, Jackson, used the printed form of return thereon, and wrote his name on a blank at the end of which the word "deputy" is printed, but the name of the sheriff does not appear in any way upon the venires or the return thereof, and there is nothing in the record in any way to indicate that Jackson was deputy to the sheriff. There is no room for an argument that the jurors were selected and summoned by the sheriff acting by his deputy. Aside from this, the Jury Commissioners act was in force and was the later enactment, and if said sections 12 and 13 did, as counsel for the State argue, direct a different mode or course than that provided by the Jury Commissioners act, the latter, being the later act, must prevail. It provided a legal, convenient and sufficient mode of securing a jury, and, it is perfectly clear, excluded the operation of any other mode, either common law or statutory.

It, then, being clear the jury was not selected and summoned as the statute contemplated and directed, the question whether the refusal of the court to sustain the motion of the plaintiffs in error to quash the array was an error reversible in character is presented for determination.

It seems that, in general, the provisions of statutes in the respect of the mode of the preparation of jury lists and of obtaining jurors are directory, that a substantial compliance with the requirements of the statute is sufficient, and a mere irregularity in the drawing of jurors does not invalidate the panel unless fraud has been practiced or some great wrong done. (12 Am. & Eng. Ency. of Law, 328, 330, 332-334.) In many jurisdictions the rule has been established that in criminal cases a strict accordance with the statute and its provisions is required, and that the mode and manner of drawing the array of jurors prescribed by the law must be pursued in the administration of the criminal law. (12 Am. & Eng. Ency. of Law, 333, 334.) But this principle of law has not met

with full approval in this court.    In *Murphy* v. *People*, 37
Ill. 447, on the trial of an indictment for murder, a panel
of jurors was chosen for the third week of the term and
the venire so issued, but was afterward changed, without
authority, requiring the attendance on the second week,
and the jurors so attended accordingly, and also on the
third week.  The trial commenced during the third week,
and this was regarded as a mere irregularity, and not
sufficient to demand a reversal.    In *Wilhelm* v. *People*, 72
Ill. 468, which was a criminal proceeding, it was held
that the challenge to the array was based upon a mere
irregularity in drawing the jury, and as it was not shown
that any positive injury was done to the accused it was
not error to refuse to sustain the challenge.   In *Mapes*
v. *People*, 69 Ill. 523, in which the plaintiff in error was
charged with a misdemeanor, the ground of the challenge
to the array of jurors was that the duties in connection
with the drawing of the jury, which the law required
should be discharged by the county clerk, were not in fact
performed by the legal incumbent of that office, but by
one Benjamin F. Lee.   It appeared that by an act of the
General Assembly the duties of the office of county clerk
of Winnebago county, wherein said prosecution was pend-
ing, devolved upon two persons or clerks, one of whom,
who was charged with certain of such duties, was to be
appointed by the board of supervisors of that county,
and the other held his office by virtue of an election, as
other county clerks.  Both of these officials were present
at the drawing from the box of the names of persons to
compose the jury, and took part therein, but it appeared
that the clerk upon whom devolved the duties of shak-
ing the box and drawing the tickets therefrom did not
perform those acts, but that the box was shaken and the
tickets drawn by the other clerk.    In all other respects
the requirements of the statute were observed, and it was
ruled that there was no misconduct in the preparation of
the lists and no unfairness of the drawir   of the tickets

from the box, and that the error was too trivial and slight to constitute a ground of challenge to the array or a reversal of the judgment. In *Seibert* v. *People*, 143 Ill. 571, in which the plaintiff in error was charged with murder, the trial court ordered the clerk of the court to draw the names of additional persons from the jury box, the regular panel being exhausted, when, in the emergency presented, the statute provided that the court should direct the sheriff to summon from the body of the county a sufficient number of persons to fill the panel. This action of the trial court was declared but a mere irregularity, and that as the record failed to show the rights of the defendant were impaired or his cause prejudiced, it was ruled the irregularity was not sufficient to demand a reversal of judgment of conviction.

The rule which is to be drawn from a consideration of these cases from our own State is, that slight and trivial departures from the directions of the statute with relation to the mode of obtaining the jury, and which do not appear to have prejudiced the right of a defendant in a criminal case, will not be deemed error of reversible character. An act required by the statute to be done is not deemed indispensable if it is but in the nature of a direction as to the course of the proceedings adopted by the legislature to be pursued in order to accomplish the ultimate object of the enactment, and the omission of such an act, or the defective execution thereof, will not work reversal of the verdict of the jury, unless it should appear the cause of the defeated suitor or defendant in a criminal case had been prejudiced by the failure to observe the statute in its strictness. The right of a defendant in a criminal case to a hearing in accordance with the law of the land is not, however, to be infringed by judicial construction, and within this right is included the right to have his cause submitted to and decided by a jury which had been selected in substantial accordance with the requirements of the statute. In the case at bar

the objection is not that some step provided by the statute to be taken in the course of the proceedings marked out by the statute for procuring legal jurors has been omitted or some direction thereof not observed, but that the entire statute, and every requirement and provision of it, has been omitted, and the jury selected in a manner which it was the especial purpose and design of the statute to supersede.

In criminal cases jurors act as judges of the law and fact, wherein lies the greater reason for and importance of the rule that the requirements of a statute framed for the purpose of admitting to the list of qualified jurors only such persons as possess the qualifications required by law in order to legally enter on the discharge of the duties of jurors, shall be substantially observed and fulfilled. The statute which was in operation in Cook county at the time the plaintiffs in error were tried, committed the duty of determining who of the electors of the county should be deemed qualified to decide, as jurors, the contentions of litigants and the law and facts upon which the guilt or innocence of persons charged with crime should be determined, to three commissioners to be selected by the judges of the courts of record in that county with especial view to their competency and discretion. The action of the court in the case at bar committed this duty and power to a special bailiff of the court, who, if such action is to be upheld, was empowered to select such persons as his judgment, convenience or desire might dictate. If a defendant upon a criminal charge may be forced, over his protest and against his challenges, to submit his cause to such jurors as he may be best able to select out of the number so chosen by a special bailiff, then it is undeniable the precise evils which the Jury Commissioners act was designed to remedy may be legally inflicted upon him, notwithstanding the legislative enactment framed for the especial purpose of securing to the citizen immunity therefrom. We can but regard the

177—21

action of the trial court as a substantial violation of both the letter and spirit of the statutes, and as altogether without the rule that mere irregularity in the matter of obtaining a jury will not constitute such error as to demand a reversal of a judgment of conviction unless it can be seen from the record that such action prejudiced the cause of the defendant. To hold otherwise would be to nullify the statutes.

Other alleged errors are assigned and argued, of which one should be noticed. The case for the People was, that the two plaintiffs in error, who were policemen, claimed they were endeavoring to apprehend the deceased, in so doing each fired two shots at him from their revolvers under circumstances which did not justify the use of deadly weapons on the part of the officers of the law, and that the deceased was struck and killed from a bullet fired from one of said revolvers. The revolvers made use of by the plaintiffs in error were cartridge revolvers 38 in calibre. One of the defenses to the charge was that the ball or bullet which was exhibited to the jury as having been, as the plaintiffs in error claimed, taken from the body of the deceased and as having caused his death, was smaller in size than the ball or bullet fired from their revolvers; that the deceased, immediately before they attempted to arrest him, was engaged in a fight with an unknown man, who ran away from the place of the difficulty, and that the line of his flight was such he might have fired the shot which killed the deceased while the latter was fleeing from the officers, and that there was evidence tending to show that shots were fired other than those from the revolvers of the plaintiffs in error. Other evidence in the case tended to show that the bullet introduced in evidence was only a part of the original bullet, and that it could not be told what its size was when discharged from the revolver.

The revolvers of the plaintiffs in error were loaded with cartridges, and the tendencies of the evidence were,

*pro et con*, as to whether the ball or bullet taken from the body of the deceased had been in a cartridge or was a bullet from a muzzle-loading firearm. Evidence, expert and otherwise, was produced on behalf of the respective parties bearing upon the question whether the ball or bullet said to have been found in the body of the deceased was or not a ball or bullet which came from the revolver of one or the other of the plaintiffs in error, and the solution of that issue of fact was an important duty devolving upon the jury. At the request of the People the court gave to the jury the following instruction:

"The court instructs the jury that in this case has been produced in evidence a leaden bullet, said to have caused the death of Swan Nelson, and to have been found in his body, and that, in determining whether or not this bullet was shot from a revolver by one of the defendants, they are to consider all the evidence of the case, and in deciding whether or not the said bullet was shot from a 38 revolver in the hand of one of the defendants, they are to consider, in connection with all the other evidence in the case, the testimony of the expert witnesses, and in determining which of them is correct in his statement of opinion the jury may consider the appearance of the bullet, the absence from it of any distinguishing mark, if there be such absence, and the fact that it was shown to such witnesses, and produced before the jury, separated from the shell which contained it, and that such shell was not shown to any of the expert witnesses nor produced before the jury."

This instruction is open to more than one objection. It assumes the ball or bullet had been contained in the shell of a cartridge, which was a strongly contested question of fact. It selects particular alleged features of the testimony not conclusive in character, but merely evidentiary, and directs the special attention of the jury thereto, and thereby gives such parts of the testimony undue prominence, the effect of which is to impress the

jury with the belief the court attaches special signifi-
cance thereto.   It is argumentative in form, structure
and effect.   Such instructions have been frequently con-
demned by this court.

For the reason the jury was not legally drawn and
empaneled, as herein indicated, the judgment must be
reversed and the cause remanded.

*Reversed and remanded.*