(No. 15194.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK DEAN, Plaintiff in Error.

*Opinion filed April 18, 1923.*

1. CRIMINAL LAW—*a co-defendant's statements in presence of defendant are admissible.* In a separate trial of one of two defendants jointly indicted for robbery, the prosecuting witness may testify to statements made at the police station by the co-defendant in the presence of the defendant; and evidence that a revolver was found on the co-defendant at the time of his arrest is competent in support of the testimony of the prosecuting witness that the crime was committed by the defendants with a revolver.

2. SAME—*a State's attorney is not required nor allowed to attempt to secure convictions by unlawful means.* A State's attorney is an officer of the court charged with the administration of the law, and it is neither his duty nor his privilege to attempt to secure convictions by unlawful means.

3. SAME—*when judgment of conviction will stand though defendant's counsel failed to object to improper evidence.* Where the evidence is close and unfair advantages are taken of the defendant of such a nature that a judgment of conviction should not stand, the court will consider errors in admitting evidence notwithstanding failure to make objection; but where the evidence for the People is practically conclusive, the judgment of conviction will not be reversed though counsel for the defendant failed to object to improper evidence and did not try the case as well as he should have done.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

ROBERT W. DANIELS, (WILLIAM L. SULLIVAN, and HARRY J. BUSCH, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and GEORGE C. DIXON, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

· Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

An indictment was returned to the criminal court of Cook county charging Frank Dean, plaintiff in error, and Charles Utroska, with robbery while armed with a dangerous weapon. Plaintiff in error was tried alone, and there was a verdict finding him guilty as charged in the indictment and that he was nineteen years of age. He was sentenced on the verdict to the State reformatory and sued out a writ of error from this court, assigning for error the insufficiency of the evidence, the admission of improper and prejudicial evidence on behalf of the People, and the denial of his right to a fair and impartial trial.

· The evidence established beyond any doubt the guilt of the defendant of the crime with which he was charged and for which he was convicted. Joseph Spilky, who kept a retail men's furnishing store at 147 West North avenue, in Chicago, gave the following account of the robbery: In the afternoon of November 22, 1921, the defendant came in the store and asked to look at a cap. Within a few minutes Utroska came in and asked leave to go to the toilet. Spilky showed the defendant several caps, but he did not select one and said if he did not get a hat to suit him he would come back for the cap. The defendant and Utroska went out of the store, and on the next day, at 2:30 in the afternoon, they came back and defendant asked to look at caps again and selected one. Then he and Utroska bought gloves, shirts, neckwear and other things and purchased a suitcase. Spilky had the things on the counter and was figuring up two columns of figures of the prices on a piece of paper when Utroska struck him on the head with a revolver. After Spilky got his eyes open Utroska said, "Stick them up and get in back there!" Spilky obeyed, and heard the defendant, who was the only other person in the room,

tampering with the cash drawer and dumping out the change on the table. The defendant then came to the rear where Spilky and Utroska were, and Utroska said to Spilky, "Face the wall!" and told the defendant to search him. The defendant searched Spilky and took a check for $40 out of his pocket and about $25 in cash and his watch and chain. Utroska told defendant to tie Spilky up, and defendant tied him hand and foot and they left. Spilky's brother came in the store and untied him, and Spilky went to the cash drawer and found that $20 had been taken and only a few pennies left. He went to the corner drug store and called up the police station, and about two weeks after the robbery he saw the defendant and Utroska at the police station and identified them as the robbers. A policeman asked Utroska if he knew Spilky, and Utroska said, "Let him take off his hat." He took off his hat and Utroska said, "That is the fellow I held up on North avenue." Spilky and Utroska had some conversation there, and the policeman asked the defendant if he knew Spilky, and he said, "Yes; that is the fellow on North avenue."

Police officers testified that the defendant said he and Utroska held up a man on North avenue, at No. 147,—a gents' furnishing store,—and got $45, a check, a watch and chain, and they had some goods in the grip which they dropped when they were chased by the police, and Utroska being brought in, the defendant told the same story in the presence of Utroska, who said, "Yes, we did that job." The check that was stolen was drawn by the LaSalle Pure Food Restaurant to the order of George Born, and on the evening of the day of the robbery Utroska bought a pair of shoes for $7 at a shoe store at 3563 Fullerton avenue and paid for them with the check and received the balance of $33 in cash. There was evidence that the defendant said he waited outside of the shoe store when Utroska bought the shoes. The stolen watch was pawned by Utroska, giving the name of Burke, at a pawnbroker's shop at 752 South

State street, known as the New York Loan Bank. The watch was identified and the pawn ticket was found in Utroska's pocket.

There was other evidence for the People, but sufficient has been stated to show the guilt of the defendant unless it was met and overcome by evidence in his behalf. The evidence for the defendant consisted of his testimony contradicting every witness who testified for the People, and no person would give any credit to his wholesale denial of every fact testified to by the witnesses. No other conclusion could have been reached by the jury than that the defendant was guilty.

The alleged errors in the admission of evidence on behalf of the People, and that the defendant did not have a fair and impartial trial, relate to the same matters and come under the same head. There was scarcely any objection by counsel for the defendant or ruling by the court on the admission of evidence, and as to many of the matters complained of, objections, if made, would have been unavailing. The People had a right to prove by Spilky what Utroska said in the presence of the defendant at the police station when the defendant was asked if he knew Spilky and replied, "Yes, that is the fellow on North avenue." That is true of other testimony of police officers concerning conversations with Utroska in the presence of defendant, and evidence that a revolver was found on Utroska at the time of his arrest was competent. (*People* v. *Cunningham,* 300 Ill. 376.) There was other evidence of a different character, such as a statement of the defendant that he and Utroska and another attempted to hold up a man at Kimball avenue at eleven o'clock at night; that the defendant said there was a company of them about to organize and go out and commit robbery, and that he said it was a "Stick-up club" that he had got up, and that they had a code of signals. There was also a typewritten agreement in evidence which was found in the pocket of the defendant or

Utroska, which the defendant said he wrote on a typewriter in his father's office. It was dated December 5, 1921, and was headed in capital letters, "The Big Four—The Nights of the Golden Circle," to which the signature of the defendant, with three others, appeared. It was quite plainly an agreement for commission of crime and intended to show that the defendant was the organizer of a club for the purpose of committing other robberies. Objection was made to a typewritten code of the club, which was not admitted.

As to all such evidence, the argument is that the counsel for the defendant who tried the case in the criminal court was evidently unfamiliar with the rules of evidence or with the practice in criminal cases; that there was no objection to the illegal and prejudicial evidence regarding the other crimes, with the exception of two objections after the damage was done, and the objection to the introduction of the revolver, cartridges and the typewritten sheet; and that while it is true that this court will not pass upon errors unless properly preserved for review, still where such a palpable disregard of the rights of the defendant is evidenced by the record, the court should consider the errors as though they were properly preserved. Counsel say that the State's attorney, well knowing the evidence was improper and illegal, offered it, and the court, knowing the evidence to be of that character, did not exclude it without objection by counsel, and the result was that the defendant did not receive a fair and impartial trial. It is true that a State's attorney is an officer of the court charged with the administration of the law, and it is neither his duty nor his privilege to attempt to secure convictions by unlawful means. There may be cases where the evidence is close and unfair advantages are taken of a defendant of such a nature that a judgment or conviction should not stand, and the court will consider errors notwithstanding the failure to make objection. (*People* v. *Gardiner,* 303 Ill. 204.) In this case practically no objection was interposed by counsel for the

defendant, and the court at one time expressed surprise that objection had not been made before. The defendant employed counsel of his own selection, and the rule applies that the court will not reverse a judgment which is manifestly and unquestionably right, because counsel did not try the case as well as he should have done. (*People* v. *Anderson*, 239 Ill. 168; *People* v. *Barnes*, 270 id. 574.) Whether all the evidence now objected to was competent or not will not be considered, because it could not have affected the result. The evidence for the People was practically conclusive, and respect for the law, the administration of justice and protection against crime, for which the courts are constituted, forbid reversal.

The judgment is affirmed.      *Judgment affirmed.*