(No. 33093.—           No. 33204.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error and Appellant, *vs.* EDMUND R. MORRIS, Plaintiff in Error and Appellee.

*Opinion filed September 23, 1954.*

IRVING B. CAMPBELL, of Chicago, for plaintiff in error and appellee.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, JOHN T. GALLAGHER, and ELMER C. KISSANE, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Two cases, No. 33093 and No. 33204, have been consolidated on appeal. In each case a review is sought of a collateral proceeding in the criminal court of Cook County seeking to set aside two judgments of conviction entered in said court against Edmund R. Morris, who is hereinafter referred to as defendant. The first, No. 33093, is a writ of error to said court, which denied the petition of the defendant for relief under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1953, chap. 38, pars. 826-832.) The second, No. 33204, is an appeal from said court which granted the defendant a new trial on his petition in the nature of a writ of error *coram nobis*.

The defendant was arrested and taken into the custody of the sheriff of Cook County on May 11, 1951. On September 13, 1951, he was jointly indicted with Donald Wright for two offenses, assault to commit robbery and assault to commit murder. He was arraigned on September 20, 1951, at which time the court appointed the public

defender of Cook County to defend him. A plea of not guilty was made to each indictment.

On October 2, 1951, the defendant, appearing with his court-appointed counsel, waived a jury trial on the assault to commit robbery indictment, and a trial was had before the court. The court found him guilty and sentenced him to a term of not less than ten years nor more than fourteen years in the penitentiary. On the same day the defendant withdrew his plea of not guilty and pleaded guilty on the assault to commit murder indictment. Whereupon, the court sentenced him to a term of not less than ten years nor more than fourteen years in the penitentiary. It was adjudged that the two sentences were to run concurrently.

On February 21, 1952, the defendant filed a petition under the Post-Conviction Hearing Act, alleging that the judgments of conviction were null and void because entered in proceedings which infringed his rights under the Federal and the Illinois constitutions. He contended: (1) the representation of counsel accorded him was of such a low caliber as to amount to no representation and hence not satisfy the requirements of due process of law, and (2) he had a constitutional right to be discharged because he was not given a trial within four months from the time of his commitment. After a hearing, the court denied his petition. We allowed a writ of error to review this decision.

On October 27, 1953, the defendant filed a petition for a writ of error *coram nobis,* seeking to correct said judgments of conviction. He alleged that he had been held in continuous custody for more than four months before trial; that he was not at liberty on bail, nor did he cause a delay in the proceeding; that he was eligible for discharge for want of prosecution pursuant to section 18 of division XIII of the Criminal Code, (Ill. Rev. Stat. 1951, chap. 38, par. 748;) that his failure to make a motion for discharge left this highly important fact unknown to the court at the

time of trial, and it was a fact of substantial judicial substance so as to have prevented the judgment of record; that his failure to demand a discharge at the time of trial was not due to his willful negligence, inasmuch as he was not familiar with the Illinois penal code and did not know that such an act as the four-month prosecution statute existed; that he was arrested May 11, 1951, and was not arraigned until September 27 or 29, 1951, at which time the four-month statute had run; that during this time he had not been represented by counsel, nor had he consulted with same, as he was unable to procure private counsel; that counsel appointed to represent him did not make a motion for discharge, as said counsel had not examined the record to determine the length of continuous confinement; that the attorney was appointed on the day of trial and had not consulted with or seen the petitioner at any time prior to that time; and that he could not ignorantly or unknowingly waive his right to discharge, and the appointment and representation by counsel requiring no more than a perfunctory appearance in court does not permit counsel to waive those rights by his apathy or through his negligence, because it is his duty to protect his client from unlawful conviction due to ignorance. He prayed the writ issue and that he be allowed to make his motion for discharge for want of prosecution.

The State's Attorney filed a motion to dismiss the petition, alleging that the alleged facts stated by the defendant were known to him at the time of the trial and through his own negligence and carelessness were not presented to the court at the time of the trial; that the defendant was not prevented from presenting the alleged facts to the court at the time of trial either by duress, fraud, excusable mistake or ignorance; that since the defendant was not convicted by fraud, duress, excusable mistake or ignorance, he lost no right guaranteed by the constitution; that the alleged facts are insufficient to give the court jurisdic-

tion; and that the allegations of the petition do not set forth facts upon which the court can take jurisdiction since the matters alleged do not come within the purview of *coram nobis.*

The court overruled the motion, sustained the petition and granted the defendant a new trial on both indictments. The State perfected an appeal to this court, as the defendant was convicted of a felony. *Schroers* v. *People,* 399 Ill. 428, 433, 434.

We shall consider first the questions raised in the Post-Conviction Hearing Act proceeding.

First, was the failure to release the defendant under the four-month statute (Ill. Rev. Stat. 1953, chap. 38, par. 748,) a denial of his constitutionally guaranteed right to a speedy trial?

It is conceded by the State that more than four months elapsed between the defendant's arrest and commitment (May 11, 1951,) and the trial (October 2, 1951). Likewise conceded is the fact that he was not admitted to bail during said period, nor did he request a continuance. However, he did not at any time before conviction move to be discharged under the four-month statute.

Section 9 of the Bill of Rights of the Illinois constitution provides that in all criminal prosecutions the accused shall have the right to a speedy trial. This constitutional requirement has been considered a guarantee against arbitrary and oppressive delays. *People* v. *Hartman,* 408 Ill. 133; *People* v. *Utterback,* 385 Ill. 239; *People* v. *Maniatis,* 297 Ill. 72; *Weyrich* v. *People,* 89 Ill. 90.

No time limit is stated in the constitution, but by statute it is provided that any person committed for a criminal or a supposed criminal offense, and not admitted to bail, and not tried by a court having jurisdiction of the offense within four months of the date of commitment, shall be set at liberty by the court unless the delay shall be on the application of the prisoner.

The nature of the right accorded the accused by this statute has been considered by this court on numerous occasions. It has been held that the right is not absolute in the sense that mere lapse of time operates to oust the court of jurisdiction and thus make a release of the accused mandatory. (*People* v. *Utterback,* 385 Ill. 239.) Moreover, the right can be waived, and is waived where there is a failure to raise the question prior to conviction, or where the question is so raised but the accused withdraws his motion and pleads guilty to the offense charged. (*People* v. *Lantz,* 387 Ill. 72.) The right is also waived where the defendant seeks and obtains a continuance to a period beyond the four-month period within which he would otherwise be required to be tried, (*People* v. *Hartman,* 408 Ill. 133; *People* v. *Stillman,* 391 Ill. 227; *People* v. *Meisenhelter,* 381 Ill. 378; *People* v. *Maniatis,* 297 Ill. 72,) and where the failure to try the defendant within the time prescribed is otherwise occasioned by the defendant himself. *People* v. *Stillman,* 391 Ill. 227; *People* v. *Hotz,* 261 Ill. 239; *Healy* v. *People,* 177 Ill. 306.

In a case where the question concerns whether there has been a waiver of the statute, this court has held the case does not involve the denial of a constitutional right, and the defendant cannot raise the issue in a petition under the Post-Conviction Hearing Act. (*People* v. *Hartman,* 408 Ill. 133; *People* v. *Farley,* 408 Ill. 288.) In the latter case, the court said at page 295 : "If a defendant is afforded the basic right of a trial, and the question arises as to whether he has waived the requirements of the statute as to the time within which he must be tried, or whether an extension of such time is allowed under the provisions of law, the decision of such questions does not involve the denial of constitutional rights, but only the manner of asserting, waiving, or enforcing them." To the same effect, the court said in the *Hartman case* at page 136: "The constitution does not fix the time, and the statute

is only intended to implement the provisions of the constitution, but a violation of the statute or of the procedure under the statute does not in itself create a constitutional question."

We do not, therefore, believe that the defendant is entitled to raise the question of the court's failure to release him after the lapse of the four-month period by this petition under the Post-Conviction Hearing Act. The matter of waiver is involved, and, according to the decisions of this court, a constitutional question is not thereby raised but merely a question concerning the procedure provided by statute to implement a constitutional right.

We next consider the second contention of the defendant in support of his Post-Conviction Hearing Act petition, namely, that the representation of counsel which he received in the original cases was of such a low caliber as to amount to no representation, thus depriving him of the right to representation by counsel under article II of the Illinois constitution and the similar right, as an element of due process, guaranteed by the fourteenth amendment to the Federal constitution.

The conduct of counsel in a criminal trial in a State court may be such as to amount to the defendant being deprived of due process of law in violation of the fourteenth amendment of the Federal constitution. It has been established that the assistance of counsel may, under certain circumstances, be an essential element of due process. Since *Powell* v. *Alabama,* 287 U.S. 45, decided in 1932, this general question has been considered many times. See, for example: *White* v. *Ragen,* 324 U.S. 760, 763-4; *Wade* v. *Mayo,* 334 U.S. 672; *Tompsett* v. *Ohio,* 146 Fed. 2d 95, 98; *United States ex rel. Hall* v. *Ragen,* 60 Fed. Supp. 820; *Coates* v. *Lawrence,* 46 Fed. Supp. 414, 421-2; *Wilson* v. *State,* 222 Ind. 63, 79-82. Since the Post-Conviction Hearing Act is designed to afford an appropriate remedy for one who asserts that a conviction was obtained in pro-

ceedings where there was a denial of his rights under the Federal constitution or the Illinois constitution, the allegation of the defendant here that the representation of counsel which he received was of such a low caliber as to amount to no representation at all, and thus be in violation of both the Federal and Illinois constitutions, is such an issue as may properly be raised by a petition under the Post-Conviction Hearing Act. Therefore, it is necessary to consider whether there is merit to the defendant's contention.

There are many Illinois cases where alleged incompetency of counsel has been urged on writ of error as a reason for setting aside a conviction. There are two broad categories of these cases: (1) cases wherein the defendant was represented by counsel of his own choice, and (2) cases wherein the defendant was represented by counsel appointed by the court. A different rule has evolved for each type of case.

Where the defendant selects his own attorney the court has held, almost without exception, that the failure of such counsel to exercise care and skill in the trial of the case does not afford a basis for reversing a judgment of conviction. *People v. Pierce,* 387 Ill. 608; *People v. Hicks,* 362 Ill. 238; *People v. McDonald,* 365 Ill. 233; *People v. Carr,* 360 Ill. 88; *People v. Janish,* 360 Ill. 155; *People v. Dron,* 360 Ill. 309; *People v. Ney,* 349 Ill. 172; *People v. Hartwell,* 341 Ill. 155; *People v. Zwienczak,* 338 Ill. 237; *People v. Thompson,* 321 Ill. 594; *People v. Dean,* 308 Ill. 74. *Contra: People v. Nitti,* 312 Ill. 73.

In *People v. Pierce,* 387 Ill. 608, it was said at page 615: "Pierce employed his own counsel in the court below. The record does not disclose that he was either incompetent or remiss in performing his duty toward plaintiff in error. But even if it were otherwise, plaintiff in error's contention that he was poorly represented at the trial would be of no legal moment, as his attorney was of his

own choosing." To the same general effect is a recent Post-Conviction Hearing Act case, *Mitchell* v. *People,* 411 Ill. 407. In holding that the petitioner was not denied due process of law by reason of the alleged incompetency of his trial attorneys, this court said at page 407-8: "Ordinarily, a defendant who retains counsel of his own selection is responsible if that counsel does not faithfully serve his interests. Any other rule would put a premium upon pretended incompetency of counsel; for, if the rule were otherwise, a lawyer with a desperate case would have only to neglect it·in order to ensure reversal or vacation of the conviction."

A .different view is taken, however, in those cases where the defendant is represented by court-appointed counsel. In general, this court has held it to be the duty of the trial court to see that counsel is assigned who has sufficient ability and experience to fairly represent the defendant, present his defense and protect him from undue oppression. (*People v. Blevins,* 251 Ill. 381.) Convictions were reversed in the following cases based at least in part upon incompetency of trial counsel appointed by the court: *People* v. *Blevins,* 251 Ill. 381, (attorneys failed to object to improper evidence) ; *People* v. *Gardiner,* 303 Ill. 204, (attorney failed to object to improper cross-examination and argument) ; *People* v. *Winchester,* 352 Ill. 237, (attorney failed to object to prejudicial hearsay evidence) ; *People* v. *Schulman,* 299 Ill. 125, (attorney failed to lay proper foundation for the introduction of valuable impeachment evidence). In *People* v. *Street,* 353 Ill. 60, *People* v. *Herkless,* 361 Ill. 32, and *People* v. *Laures,* 289 Ill. 490, the convictions were affirmed, the court being of the opinion that the defense was, in fact, ably conducted.

It is to be noted that in reviewing a case on writ of error the court does not consider facts outside the trial court's record; hence, in many of the Illinois cases cited above the matter of the competency of counsel has been

treated rather summarily, there being nothing in the record to show the alleged incompetency or any prejudice resulting therefrom. See also *People* v. *Kocielko,* 404 Ill. 54, *People* v. *Witt,* 394 Ill. 405, and *People* v. *Lantz,* 387 Ill. 72. In a proceeding under the Post-Conviction Hearing Act, however, the court may receive proof by affidavits, depositions, oral testimony or other evidence which relates to an alleged deprivation of a constitutional right. For example, in the *Mitchell case,* the trial court granted the petitioner a hearing on affidavits, although said affidavits in the opinion of both the trial and the reviewing courts did not disclose any merit in the defendant's contentions.

In *People* v. *Francis,* 356 Ill. 74, the public defender was appointed to represent the defendant. On writ of error, the defendant asked the court to vacate the judgment of conviction because of alleged neglect of counsel to properly interview the defendant and prepare the case for trial. By supporting affidavit, the defendant said that prior to trial he had only one five-minute conference with one attorney from the public defender's office and later only a short perfunctory conference on the morning of the trial with the attorney who represented him in court. It was stipulated that only one interview was held at the county jail between the defendant and the representative of the public defender's office, but counteraffidavits, signed by assistants in that office, recited that much additional preparation and attention had been given to the case. It was stated that a full abstract of the evidence adduced at the coroner's inquest was procured and studied, together with a written memorandum of an interview with the defendant made by one of the staff. In rejecting the defendant's contention the court said at pages 77-78: "The question whether a defendant was adequately represented by able counsel must be answered solely from the circumstances of each particular case. Here the defendant was arraigned on August 22, 1933, and at this time the court

appointed the public defender to represent him. The same law (Smith Stat. 1933, chap. 34, pars. 163*d*, 163*h*,) which provides for the appointment of the public defender in Cook County to represent all persons charged with crime who are unable to employ counsel, also provides for the appointment of assistant public defenders, who shall be licensed attorneys. No challenge is made of the qualifications, legal or moral, of either Ferlic or Power to properly represent defendant. At no time prior to judgment did defendant express dissatisfaction or request that some other attorney be appointed. No complaint is made that defendant ever requested to see his attorney and was thereafter refused or neglected. No evidence is pointed out which might have been produced in defendant's favor but was negligently omitted. On the other hand, an examination of the record shows that Power conducted his defense against insurmountable odds. * * * We have held that where the evidence is close and the accused is poorly represented by counsel a reversal may be justified, (*People* v. *Gardiner*, 303 Ill. 204,) but, as we have shown, no such situation exists here."

Regarding the right of an accused to a new trial because of the incompetency or negligence of his counsel in the trial of the case, 23 C.J.S., Criminal Law, par. 1443, states: "As a general rule, a new trial may be granted where the incompetency of counsel is so great that accused is prejudiced and prevented from fairly presenting his defense, and a new trial sometimes is granted because of some serious error on the part of such attorney in the conduct of the case; and in this respect accused's application will be treated more favorably when the attorney is one appointed by the court than when the attorney is one selected by himself. However, unless accused is prejudiced and thereby deprived of a fair trial, a new trial does not necessarily follow from either the attorney's incompetency or his neglect."

In *United States ex rel. Weber* v. *Ragen,* 176 Fed. 2d 579, the court said at page 586: "As to the requirement under the Fourteenth Amendment, the services of counsel meet the requirements of the due process clause when he is a member in good standing at the bar, gives his client his complete loyalty, serves him in good faith to the best of his ability, and his service is of such a character as to preserve the essential integrity of the proceedings as a trial in a court of justice. He is not required to be infallible. We know that some good lawyer gets beat in every law suit. He made some mistakes, the printed opinions that line the walls of our offices bear mute testimony to that fact. His client is entitled to a fair trial, not a perfect one." In a case involving alleged violation of the sixth amendment of the Federal constitution in a situation where counsel had to present an inconsistent defense for a codefendant, the Supreme Court of the United States, in *Glasser* v. *United States,* 315 U.S. 60, said at page 76: "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

In the vast majority of the decisions pertaining to the question of the competency of trial counsel, the matter has been urged on direct appeal from the judgment, as in Illinois, for example, by writ of error. In such cases, the opinions generally do not rest on explicit constitutional grounds. As is true in many areas of State criminal procedure, however, this problem has in recent years been considered in relation to the expanding concept of due process of law under the fourteenth amendment of the Federal constitution, as enunciated by the Supreme Court of the United States. Where formerly a conviction might be reversed because in the reviewing court's opinion the defendant was denied a fair trial, the complained-of conduct may now be held to result in the defendant's being

deprived of due process of law. The deprivation of a constitutional right thus being involved, the question can often be raised in a collateral proceeding, as in this case by a petition under the Post-Conviction Hearing Act. In such case the State court must determine whether there has been the infringement of any right under its own State constitution as well as under the Federal constitution. The precedent of the State, however, is usually not based on constitutional considerations, and, as in Illinois, is often based on facts appearing in the trial court record only. And since the Federal decisions do not afford a clear guide regarding the requirements of Federal due process, it is difficult to formulate a standard by which this type of case can be judged. However, based both on precedent and reason, we believe that in order to sustain his position here the defendant must clearly establish: (1) actual incompetency of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different. Due to the nature of the inquiry it is hardly possible to be more definite, and each case will have to be judged on its own particular facts as they appear in the context of the proceeding under consideration.

In this case the defendant was arrested on May 11, 1951, and arraigned on September 20, 1951. At the arraignment the court appointed the public defender of Cook County as his counsel, after he testified he was without funds to hire an attorney. Rule 27A of this court, adopted in 1948, provides, in part, as follows: "In all criminal cases wherein the accused upon conviction shall, or may, be punished by imprisonment in the penitentiary, if, at the time of his arraignment, the accused is not represented by counsel, the court shall, before receiving, entering, or allowing the change of any plea to an indictment, advise the accused he has a right to be defended by counsel. If

he desires counsel, and states under oath he is unable to employ such counsel, the court shall appoint competent counsel to represent him."

At the hearing on his post-conviction petition, the court heard the testimony of two witnesses, the defendant and the assistant public defender who represented him in court.

The attorney testified that he did not talk to the defendant until the day of trial, which was October 2, 1951. He said he discussed the merits of the case with the defendant while the defendant was in the bull-pen of the court, but could not recall how long he talked with him. While talking with the defendant he had with him a statement which the defendant had given previously to another member of the staff, and he said he went over the statement with the defendant. He said he did not check any record with respect to determining whether or not the four month statute had run, but later found out that it had. He outlined the usual procedure of the public defender's office concerning the interrogation of prisoners in the county jail. He said that after appointment some lawyer takes a statement from the defendant or interviews him. Afterward, the defendant is given a questionnaire which he is to complete and send in to the office. It is on the basis of this, he said, that the defense is prepared. In the case of this defendant, another member of the staff interviewed the defendant and made a report. Also the defendant completed the questionnaire and mailed it to the office. Copies of both the questionnaire and the report of interview were introduced in evidence. Each was a printed form with the blanks partially filled. The questionnaire, consisting of two pages and answered by the defendant in his own handwriting, contained general information regarding the defendant's name, address, residence, place of birth, nationality, military service, etc. It had a blank for the date of arrest, in which the defendant wrote "5-11-51." He wrote "not guilty" in response to

the question if he was guilty or not guilty of the crimes charged, and as a "statement of defense" he wrote "I know nothing about the crime. I shot in self-defense." There was some additional data in the questionnaire.

The other exhibit, consisting of a one-page printed form with blanks partially filled in, was entitled "Report On Interview With Defendant." As aforesaid, it was completed by an assistant public defender other than the attorney who appeared in court for the defendant. It contained information in the nature of personal data about the defendant, and also had written after a section "defendant's statement" the following: "Deft went in tavern or liquor store around 8:30 PM dark out went in store asked for bottle of whisky and showed $5.00 CW turned back—deft put money in pocket and pointed gun three other other pocket—another man pulled gun (patron in store) and shot at deft hitting him about 4 or 5 times. Deft was towards door and shot his gun 5 times. But hit only one of C.W.s he fled in car and had accident police arrested him in car. Driver of car got away. Deft had 32 automatic Patron had 38—his bullet must have hit owner of store."

The defendant testified that he was arrested on May 11, 1951, placed in confinement at the county jail, and so remained in custody until the time of the hearing. A record of the county jail was received in evidence which showed his admittance to jail on May 17, 1951, and that he had been in custody from May 11, 1951. He said he had not seen any attorney until the day of the arraignment, at which time he spoke to three men of the public defender's office. He had a short conversation with the attorney who filled out the aforementioned report, whom he knew was taking notes at the time. He testified that he did not thereafter see any representative of the public defender's office until the day of trial, October 2, 1951. At this time he had a brief conversation with the attorney who repre-

sented him in court. This conversation took place in the court bull-pen and lasted three or four minutes. He said the attorney asked him if he wanted a jury, to which the defendant asked him what he suggested. The attorney said "It is up to you," and the defendant replied "I guess I'll take a bench trial." The attorney returned to the court room, and about ten minutes later the defendant was called before the court, informed of right to jury trial, etc., and the proceedings began. Up until this time he said that he had never discussed the merits of his case with the attorney. After the preliminaries were over, there was a recess at which time the attorney came back to the bull-pen and asked the defendant about witnesses which he had listed on his questionnaire and for what purpose they were to be called to testify. After the defendant told him, the attorney said it wouldn't be necessary because of his record to call any character witnesses. He further told the defendant that everything was useless, and did not outline any plans for defense. The defendant said he did not learn of the four month statute until he received a letter from his codefendant, who was released on the basis of this statute.

In our judgment the conduct of the defendant's counsel did not measure up to that expected of a competent and conscientious trial attorney. Since 1874 the so-called four month statute in some form has been a fundamental part of the criminal law of this State. There can be no justifiable excuse for an attorney who purports to represent a defendant in a criminal prosecution not being familiar with its provisions. Nor do we perceive any justification for counsel here not checking records or otherwise making an investigation in order to determine if the defendant could avail himself of rights under the statute. Assuredly, a competent attorney might, due to his concentration of efforts or otherwise, overlook the statute's applicability to a particular factual situation or be mistaken regarding said application. However, where the omission is coupled

with meagre preparation and scant attention to the case, as shown here by the attorney's own testimony at the hearing, such failure can not be written off as a mere error in judgment. This is particularly true of an attorney acting as public defender, for in such capacity he is presumed to possess a degree of expertise in the field of criminal law and is expected to be zealous in defending the rights of those whom he is assigned to defend.

Moreover, there is no doubt but that the defendant has been prejudiced by reason of said incompetency. For it seems to be conceded that had a timely motion been made the defendant would have been entitled to his release. Significantly, his codefendant was released pursuant to the statute.

We reiterate that our decision rests upon a consideration of the particular facts of this case. We do not mean to criticize generally the public defender of Cook County, whose office unquestionably is staffed by able and conscientious attorneys who day after day perform valuable, and usually unsung, services for those whom they are assigned to represent. We simply hold that in this specific instance the convictions were obtained in proceedings which infringed the constitutional rights of the defendant, and, therefore, they must, in accordance with prevailing law, be set aside.

In case No. 33093, the judgment of the criminal court of Cook County is reversed, and the cause is remanded to said court with directions to grant the defendant a new trial on each indictment. Since said cause is reversed and remanded for a new trial, the questions raised in case No. 33204 are now moot. Therefore, in case No. 33204 the appeal is dismissed.

*No. 33093, Reversed and remanded, with directions;*
*No. 33204, Appeal dismissed.*