42 Ill. App.3d 472 (1976)
355 N.E.2d 619
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
ERNEST JEROME CLARK et al., Defendants-Appellants.
No. 75-176.
Illinois Appellate Court  Third District.
Opinion filed September 29, 1976.
*473 Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellants.
Edward P. Drolet, State's Attorney, of Kankakee (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.
Affirmed in part and reversed and remanded in part.
Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:
Defendants Ernest Jerome Clark, A.D. Clark and Otis Carl Williams appeal from a judgment of conviction of burglary entered upon a jury verdict finding all defendants guilty of burglary. As a result, defendants A.D. Clark and Otis Carl Williams were sentenced to terms of 5 to 20 years in prison and defendant Ernest Jerome Clark was sentenced to a term of 2 to 8 years.
On appeal in this court, all three defendants contend that the trial court erred in instructing the jury in accordance with IPI Pattern Instruction  Criminal No. 13.21 which advised the jury that possession of recently stolen property would permit an inference that defendants obtained possession of the property by burglary. Defendants A.D. Clark and Ernest Jerome Clark (hereinafter referred to as E.J. Clark) also argued that they were denied their right to effective assistance of counsel by reason of the fact that one public defender represented all three *474 defendants at the trial and that defendants had mutually antagonistic defenses.
The record discloses that on March 30, 1974, a P & E Supermarket in Kankakee County, Illinois, was burglarized. A large amount of meat together with candy, gum and cigarets was taken in the burglary. Prior to the trial, defense counsel, who was appointed public defender, filed a motion for change of venue, alleging that publicity from the previous murder trial of A.D. Clark and Otis C. Williams made it impossible for defendants to receive a fair trial in Kankakee County. When a voir dire examination of the jury demonstrated that only one of the jurors was aware of the previous trial, and only vaguely so, the motion for change of venue was denied. Another pretrial motion was made for severance of trials on behalf of E.J. Clark. This motion was oral and was premised on the contention that E.J. Clark would be unable to receive a fair trial because he was joined with the other two defendants who had just been convicted of murder in what defense counsel considered a widely publicized trial. Counsel also raised the issue that a judicial confession made by Williams would be prejudicial to E.J. Clark even though the confession, as edited, only showed that Williams by name was involved in the crime. The motion for severance was denied. The court had ruled that any reference to A.D. Clark in the judicial confession of Williams should be deleted.
The State established at the trial that the P & E building had been broken into and a large quantity of meat, candy and cigarets had been taken. A resident of the area testified to seeing a station wagon parked outside the store at approximately 3 a.m. on March 30. The wagon was parked outside the store near a side door, which door was used for entry into the market.
Antonio Riggins, stepfather of the Clarks, testified that early in the morning of March 30, the three defendants came to his home and asked to borrow his car to move some meat. Riggins eventually agreed, and thereafter drove his automobile to the location of the disabled station wagon where he and the defendants transferred meat, candy, cigarets and chewing gum from the station wagon to Riggins' car. Riggins then drove to the home of A.D. Clark, Sr., where the meat was transferred to Clark, Sr.'s car. According to the testimony, all three defendants were present at that time.
There was testimony of fingerprints found on the broken glass door of the market where entry was made. A crime laboratory technician testified that the fingerprints were those of defendant Williams. The chief of police of Pembroke testified that he later discovered that the freezer of A.D. Clark was full of meat and that the labels on the meat packages were similar to those used by the P & E Market. Clark, Sr. testified that Riggins *475 had brought the meat to him, but denied that the three defendants were with him at the time.
The only witness for the defendants was E.J. Clark. He specifically denied complicity in the burglary. He testified that on that night, at a time which he fixed at 11:30, while he was walking home from his girlfriend's house he saw defendants A.D. Clark and Williams in the station wagon. They offered him a ride home which he accepted. Once inside the car he noticed it was full of meat. Later the car broke down and E.J. Clark went to the Riggins' home to get help. Five or ten minutes later the other defendants arrived and then left with Riggins' car. E.J. Clark testified that he stayed back, and did not leave with the other two defendants. He also denied any conversation with his girlfriend Geraldine about the burglary. When cross-examined, E.J. Clark admitted he was only guessing at the approximate time but insisted it could not have been later than 1 a.m. (Apparently, from the comments of the trial judge at the sentencing hearing, the terms of E.J. Clark's parole did not permit him to be out after 1 a.m., and the trial judge expressed the belief that E.J. Clark insisted that it was earlier than 1 a.m. because of his fear of having his parole revoked.) As to the time element, an employee of the P & E Market revealed that he was in the store until nearly 1:30 a.m., so that the burglary was apparently committed somewhat after that time.
At the conference on instructions, defense counsel objected to IPI  Criminal No. 13.21 on the ground that there were other possible explanations for defendants' possession of the recently stolen property and that there was some question as to whether E.J. Clark was ever "in possession" of the stolen property. The trial court overruled the objection and gave the instruction.
As we have indicated, the jury returned verdicts of guilty as to all three defendants. At the sentencing hearing, the trial court stated orally, to E.J. Clark, that had the trial been a bench trial, E.J. Clark might have been found not guilty. The judge stated he believed E.J. Clark had lied about the time he had seen and met the other two defendants. The trial judge said "Perhaps you changed your story a little bit so your parole officer wouldn't be yanking you back on a parole violation. If you did that, you made a very serious mistake." As we have also noted, E.J. Clark was sentenced to a term of 2 to 8 years and Williams and A.D. Clark were sentenced to terms of 5 to 20 years.
 1 The first issue for consideration is whether defendants were denied effective assistance of counsel by reason of failure of appointed counsel to request severance of all three cases where the defenses of the three defendants were mutually antagonistic. The defendants contend that the trial counsel was so negligent in his failure to move to sever the trials of the three defendants that they were effectively denied their *476 constitutional right to counsel, as guaranteed by the Sixth Amendment to the United States Constitution and by article I, section 8 of the 1970 Illinois Constitution. In Illinois, the cases have held that in order to successfully challenge efficacy of counsel on appeal, a defendant must show (1) actual incompetence of counsel, as reflected by the manner of carrying out his duties at the trial, and (2) substantial prejudice resulting, without which the outcome probably would have been different. People v. Morris (1954), 3 Ill.2d 437, 121 N.E.2d 810; People v. Stepheny (1970), 46 Ill.2d 153, 263 N.E.2d 83; People v. Williams (3d Dist. 1975), 27 Ill. App.3d 858, 327 N.E.2d 461.
It is contended that defendants A.D. Clark and Otis Williams had defenses that were adverse to E.J. Clark in two respects. It was first shown that E.J. Clark first took the stand in his own defense and admitted having come upon the other two defendants after leaving his girlfriend's house. According to the testimony of E.J. Clark, after he was offered a ride by the other two co-defendants, he saw that their station wagon was full of meat. This defense testimony of E.J. Clark was, of course, adverse to A.D. Clark and Williams in that it was further testimony that A.D. Clark and Williams were in the station wagon with the stolen meat shortly after the burglary had taken place. Although there was other evidence to connect Williams and A.D. Clark with the meat, the testimony of the co-defendant as to their possession of a car full of meat was obviously adverse to defendants A.D. Clark and Williams.
It is contended, secondly, that the defenses of A.D. Clark and E.J. Clark were antagonistic in that it was in the best interests of A.D. Clark to have the prior judicial confession of Williams read, with its references to A.D. Clark deleted, whereas it would have been in the best interests of E.J. Clark to have had the entire confession read as it was originally given, thus indicating to the jury that only two persons, Williams and A.D. Clark, were involved in the actual burglary, since the judicial confession of Williams indicated that he and A.D. Clark burglarized the market. No mention is made in the confession of anyone else. The jury, under such circumstances, would likely conclude that only these two persons (and not E.J. Clark) were involved in the burglary, since no reference is made to E.J. Clark or any other third person.
It should be noted that, on appeal, counsel for defendants do not argue that the error as claimed warrants reversal as to defendant Williams. As appellate counsel admits, by reason of the prior judicial confession by Williams, it does not appear that the Williams' case was substantially prejudiced by counsel's alleged incompetence.
It is apparent, however, that as to defendant E.J. Clark, the failure of the court to sever was sufficiently prejudicial so that it could be said that if severed as to E.J. Clark, the outcome of his trial probably would have *477 been different. Remarks of the trial judge at the sentencing hearing show that the case was a close one as to E.J. Clark and the statement of the trial judge that had the trial been a bench trial, E.J. Clark may very well have been acquitted, shows that E.J. Clark may clearly have been prejudiced. In absence of any other indication to the contrary, the opinion of the trial judge should be given great weight. The confession of Williams, if it had been admitted into evidence, would have been helpful to E.J. Clark if the full text of his confession had been submitted to the jury. While there is a question as to whether the confession would have been admissible if Williams had not testified in a trial which had been severed, the question of admissibility need not be determined by us since, if E.J. Clark's trial had been severed and had followed the trial of the other two defendants, he may have had the benefit of the testimony of such defendants indicating that he was not a participant in the burglary. This is shown as a result of the sentencing hearing where both Williams and A.D. Clark informed the judge that E.J. Clark was not involved in the burglary.
Independent counsel at the trial may also have gone into more detail as to the circumstances and time of E.J. Clark's entry in the station wagon which was already full of meat. Perhaps trial counsel, who represented both other defendants, could not emphasize E.J. Clark's innocence of the burglary and the guilt of the other defendants without emphasizing the guilt of the other defendants unduly. The State contends that even if the defendant E.J. Clark was prejudiced, the testimony of Riggins and of E.J. Clark's girlfriend, Geraldine Hollins, was sufficient to sustain the conviction. The testimony of Riggins, however, is not contradictory significantly of the testimony of E.J. Clark, since E.J. Clark had admitted being with the others at the time they went to Riggins' house to get another automobile. The testimony of Geraldine Hollins, also, was simply to the effect that E.J. Clark had told her he was "in on" the burglary. The statement may have simply reflected the fact that he was being made a beneficiary of the proceeds or the results of the burglary and does not establish legal accountability of the crime of burglary itself.
 2 As to A.D. Clark, however, while he was prejudiced by the testimony of E.J. Clark, that the station wagon was full of meat when Williams picked E.J. Clark up, it is doubtful, on the basis of the record, that without such testimony the outcome as to A.D. Clark would have been any different. Riggins' testimony put A.D. Clark at the scene of the station wagon, and, in fact, showed that during the transaction between the defendants and Riggins, A.D. Clark did most of the talking, creating the impression that he was the director of the operation. The chief of police of Pembroke also found a refrigerator-freezer full of meat at the residence of A.D. Clark. When all the evidence is reviewed on this issue, it is doubtful whether the admittedly prejudicial testimony of E.J. Clark *478 was sufficiently prejudicial that it could be said that the outcome of the trial without such testimony would have been different. We, therefore, conclude, as to A.D. Clark, that no sufficient prejudice is shown. This issue was not raised as to defendant Otis Williams, by reason of his judicial confession.
 3 Defendants also contended that the court erred in giving IPI  Criminal No. 13.21 to the jury. This instruction stated: "If you find that the defendants had exclusive possession of recently stolen property, and there was no reasonable explanation of their possession, you may infer that defendants obtained possession of the property by burglary." It is the contention of defendants that the giving of that instruction invaded the province of the jury and tended to shift the burden of proof to defendants. The State points out that while there was an objection to the giving of the instruction, the objection was on grounds different than those urged now on appeal. Counsel did not complain of the instruction in the written post-trial motion, nor orally at the hearing on the post-trial motion. We, therefore, conclude that the issue was waived. See People v. Hairston (1970), 46 Ill.2d 348, 263 N.E.2d 840, cert. denied, 402 U.S. 972, 29 L.Ed.2d 136, 91 S.Ct. 1658.
 4 The courts of Illinois also have ruled a number of times that an instruction to the jury to the effect as set forth in the instruction objected to is not violative of defendants' constitutional rights. (People v. Whittaker (1970), 45 Ill.2d 491, 259 N.E.2d 787; People v. Harris (3d Dist. 1971), 131 Ill. App.2d 824, 268 N.E.2d 724.) We note defendants's reliance on the Indiana Appellate Court in the case of Abel v. State (Ind. App. 1975), 333 N.E.2d 848, but conclude that case is not authority in this State particularly in view of the fact that the rule of law as stated in the instruction has been a part of the law of the state of Illinois since Jones v. People (1850), 12 Ill. 259.
By reason of the foregoing, and particularly by reason of the prejudicial conflict of interest which existed as to the counsel seeking to represent both E.J. Clark and the remaining defendants, we conclude that the judgment and sentence of defendant E.J. Clark should be reversed and his case remanded for a new trial.
For the reasons stated, therefore, we affirm the convictions and sentences of A.D. Clark and Otis Williams, but reverse and vacate the conviction and sentence of E.J. Clark and remand his case to the Circuit Court of Kankakee County for a new trial.
Affirmed as to defendants A.D. Clark and Otis Carl Williams. Reversed and remanded as to defendant E.J. Clark.
STENGEL and BARRY, JJ., concur.