THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ORVID GARRETT, Defendant-Appellant.

Fifth District   No. 76-300

Opinion filed July 22, 1977.

G. MORAN, J., dissenting.

Michael J. Rosborough and Michael Yovovich, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Howard L. Hood, State's Attorney, of Murphysboro (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CARTER delivered the opinion of the court:

Orvid Garrett, defendant, appeals from a verdict of guilty on a charge of armed robbery returned by a jury in the circuit court of Jackson County. Defendant was indicted with two others on the charge of armed robbery and on a charge of unlawful use of weapons. Defendant and one co-defendant were found guilty of armed robbery and the weapons charge, but the third co-defendant was acquitted of both charges. The court sentenced the defendant to the Department of Corrections for a term of not less than 6 nor more than 15 years. Defendant and co-defendant Watts appealed and we granted the motion of the State Appellate Defender to withdraw as counsel for Watts and to sever the appeal. Defendant contends that the trial court erred in denying his motion to suppress certain identification testimony and in failing to allow his motion for appointment of separate counsel.

On February 15, 1976, near midnight, three individuals approached a Clark service station in Murphysboro as attendant Daniel Sheen was counting cigarettes at one of the gas islands. One of the three approached Sheen and bought a pack of cigarettes while the other two stood apart. Sheen entered the station to take inventory and was interrupted by two individuals, one wearing bib overalls and the other wearing orange pants and a black turtleneck which was pulled up over his nose. The person in

the overalls announced a holdup and the three went into a back room to get the cash from Sheen's person and from a cash drawer. Both persons were armed with drawn guns. The incident lasted about 5 to 7 minutes and the lighting on the lot and in the building was good. Sheen activated an automatic alarm that rang in the local police station and ran outside to discover the robbers' direction and method of flight.

At about 11:57 p.m. a police car was sent from the police station to the site of the robbery and on the way one of the officers took notes on all the cars that were going in the opposite direction. Upon reaching the Clark station the officers were given a description of the robbers as three black males, one wearing bib overalls and another wearing orange pants and a black turtleneck. The officer who had taken notes on the oncoming traffic remembered that a large black car carrying three black males had passed them and a radio dispatch was made on the car. Several minutes later a police officer found a black Lincoln parked outside the American Legion hall and a State trooper observed a black person wearing bib overalls sitting in the car. Two more black individuals entered the car and it began to move out of the parking lot. The car was stopped and the occupants were ordered out. Helen Watts, a co-defendant, was wearing bib overalls and defendant was wearing orange pants.

Watts was searched and on her body was found two rolls of money. Defendant had on his person $18.06 in change. Officers found a gun in the car under an armrest, and under the front left tire another gun was found. Both were loaded. A black turtleneck sweater was found in the front seat of the car.

The amount of time that elapsed from the activation of the alarm system to the arrest of the co-defendants was less than 10 minutes. About an hour after the arrests of the co-defendants, the police contacted Sheen and asked him to come to the county jail and look at some people. Sheen immediately complied and upon arriving he was shown the co-defendants, one at a time. He identified the defendant and the others at the jail and later in court during the trial.

At trial the co-defendants were all represented by the same counsel and all relied on alibis as a defense. Defendant did not testify but the third individual arrested, Calvin Collier, testified that he and defendant had been at the Legion hall since about 11:30 on the night of the robbery. Watts testified that she had been to several bars that night and when she got to the Legion hall she was approached by defendant and Collier who asked for a ride to Carbondale. When they left the Legion hall they were immediately stopped by the police. Defendant's motion to suppress the identification testimony was denied by the court on the basis that such testimony had an origin independent of the pretrial identification procedure.

Defendant's first contention of error is that the court should have granted his motion to suppress all identification testimony because the in-court identification was the product of an unnecessarily suggestive pretrial showup and it was devoid of any independent origin.

The courts of review of this State have many times allowed a "showup" identification to support a conviction. (*People v. Bey*, 51 Ill. 2d 262, 281 N.E.2d 638; *People v. McMath*, 45 Ill. 2d 33, 255 N.E.2d 835; *People v. Heath*, 35 Ill. App. 3d 880, 342 N.E.2d 45.) In *People v. Bey*, the defendant was apprehended on the premises where a burglary had just been reported to police. The victims were immediately shown the man and they identified him as the one they had seen in their house. The supreme court in affirming the conviction stated:

"Defendant now contends that the 'show up' immediately after his arrest was unnecessary and conducted under such unduly suggestive conditions that he was denied due process. Citing *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, he argues that there was no justification for this confrontation with the witnesses after his arrest, and that the proper procedure would have been a lineup at the police station. We do not agree. In *People v. Young*, 46 Ill. 2d 82, a similar viewing of the defendant by witnesses soon after the crime was held proper. We recognized that such show-ups are important to the rapid and effective solution of crimes and 'police officers who failed, in circumstances like these, to determine at once whether or not the victim of the crime could identify the men in custody as the men who had committed the crime, would be subject to criticism.' 46 Ill. 2d 82, 87. Thus, we cannot say that the showing of the defendant, coming as it did so soon after the crime and at the building where the crime occurred, was violative of any of defendant's rights." 51 Ill. 2d 262, 265.

In *People v. Heath*, the defendant was stopped and arrested about 15 minutes after an armed robbery had occurred. The victims were then shown the defendant in a police car and they identified the defendant as the perpetrator. The court upheld the identification procedure. 35 Ill. App. 3d 880, 884.

In *People v. Allender*, 33 Ill. App. 3d 843, 342 N.E.2d 284, this court listed five factors to consider in determining the likelihood of the misidentification of defendants. Those factors were as follows: (1) Opportunity of the witness to view the suspect, (2) witness' degree of attention, (3) accuracy of witness' description of suspect, (4) level of certainty demonstrated by the witness at the confrontation, and (5) length of time between the crime and confrontation. (33 Ill. App. 3d 843, 846.) In that case a policeman observed a burglary in progress for about 10 to 15

seconds. It was night and the policeman was about 35 feet from the perpetrators who were inside a building. The defendant escaped the policeman, but the officer asked the police department for a picture of a man whose name appeared on the side of a truck used by the burglars. When shown the picture, the officer identified the man as one of the burglars. This court reversed the defendant's conviction on the grounds that the officer had "far less than an excellent opportunity to observe the defendant at the time of the crime * * *." (33 Ill. App. 3d 843, 849.) The officer at trial was somewhat equivocal as to what all happened that night. The officer also stated on cross-examination that the lighting was not good outside the building and that the window that he had observed the burglary through was "cloudy and murky." 33 Ill. App. 3d 843, 847.

■■ In the case before us Sheen had an excellent opportunity to observe the defendant in the well-lighted station and the defendant stood very close to Sheen for several minutes. Sheen's attention to defendant was solidified when defendant pressed his gun into Sheen's chest several times. The clothing of the robbers was accurately identified by Sheen.

On authority of the foregoing cases, we find that defendant was identified in a positive manner, not in derogation of any of his rights.

Defendant also contends that he was denied the effective assistance of counsel when the trial court denied his motion for appointment of separate counsel. In order to challenge the efficacy of counsel on appeal, a defendant must show actual incompetence as reflected by the manner of carrying out his duties at trial, and substantial prejudice resulting, without which the outcome would have been different. *People v. Clark*, 42 Ill. App. 3d 472, 355 N.E.2d 619.

Defendant argues that his counsel was not able to pursue certain matters because of his representation of three co-defendants. At trial all three defendants relied on alibis as a defense.

■■ This court in *People v. Dickens*, 19 Ill. App. 3d 419, 311 N.E.2d 705, stated that co-defendants do not have the right to separate counsel unless there is a showing that their defenses may be inconsistent. In this case the defendants all claimed they were somewhere other than the site of the robbery. There were here no inconsistent defenses among the defendants and a charge of ineffective assistance of counsel must fail.

Having found no substantial error requiring a reversal, the judgment and sentence of the circuit court of Jackson County is affirmed.

Affirmed.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

I dissent. In my opinion, the defendant was denied the effective assistance of counsel when the trial court denied the public defender's motion to withdraw as counsel for Helen Watts or withdraw as counsel for defendants Garrett and Collier.

In *Glasser v. United States*, 315 U.S. 60, 86 L. Ed. 860, 62 S. Ct. 457 (1942), the Supreme Court held the Sixth Amendment guarantee of assistance of counsel was violated by a court order requiring a lawyer to represent conflicting interests. Where such a conflict of interest is shown to exist, the amount of prejudice to the defendant need not be established as the Sixth Amendment guarantee is both fundamental and absolute. (*Glasser v. United States; People v. Ware*, 39 Ill. 2d 66, 233 N.E.2d 421.) Thus the defendant need not establish, contrary to the majority's statement, actual incompetence and substantial prejudice without which the outcome would probably have been different.

> "Where two or more co-defendants are represented by the same counsel, some specific instance of prejudice, some real conflict of interest, resulting from the joint representation must be shown to exist before it can be said that one of the defendants has been denied effective assistance of counsel." (*People v. Richardson*, 16 Ill. App. 3d 830, 833, 306 N.E.2d 886, 889.)

While conflict of interest in fact must be shown, counsel's pretrial motion to withdraw because of conflicts in the defense must be given weight. Indeed, in *Glasser* the court stated that the mere insistence upon separate counsel by the defendant should be respected without regard to any conflict of interest. See also *People v. McCasle*, 35 Ill. 2d 552, 221 N.E.2d 227, where the court distinguished *Glasser* as a case where the attorney's reluctance to represent two defendants based on inconsistent defenses was made known *before* trial.

The trial court is under a duty to safeguard the Sixth Amendment rights of an accused (*Glasser v. United States*); and just as a trial judge has a continuing duty to grant a severance when prejudice to a defendant becomes manifest (*United States v. Kelly*, 349 F.2d 720 (2d Cir. 1965)), so must the trial court grant separate counsel when conflict becomes clear. This is particularly true when counsel has alerted the court to possible prejudice before trial.

In this case, the defendant alleges his attorney was unable to attack the credibility of eyewitness identification at the pretrial suppression hearing by contrasting the station attendant's view of Watts with his view of the defendant. The attendant testified that the person he identified as Garrett wore a black turtleneck sweater pulled up to nose level. Watts, by contrast, was unmasked and stood next to the attendant with a gun

pointed at his chest. The difference in the ability to identify the defendant is a crucial issue requiring full efforts of counsel; efforts which were not forthcoming because of counsel's fear of prejudice to Watts.

In addition, the evidence against Watts was significantly greater than the evidence against Garrett. Watts admitted obtaining money from the station, had the money in her possession, admitted the weapons were hers, and was positively identified by the attendant based on close proximity. This evidence clearly could have influenced the jury to believe that Garrett was guilty by association with Watts soon after the crime. Counsel could not, of course, cross-examine Watts when she took the stand, nor could he attempt to establish her collaboration with persons other than Garrett. In my opinion, these considerations are sufficiently conflicting to require separate representation.

Contrary to the view expressed in *People v. Dickens*, 19 Ill. App. 3d 419, 311 N.E.2d 705, I am of the opinion that a substantial difference in the weight of the evidence against one co-defendant and an inability to cross-examine effectively for fear of prejudicing another defendant are not merely speculative or theoretical (*People v. Clark*, 42 Ill. App. 3d 472, 477, 355 N.E.2d 619, 622). Accordingly, I would reverse.

In addition, I believe the failure of counsel to move for a severance also denied the defendant effective assistance of counsel under the standard of actual incompetence resulting in substantial prejudice without which the outcome would probably have been different. *People v. Clark*, 42 Ill. App. 3d 472, 355 N.E.2d 619.