**UNITED STATES ex rel. Otis WILLIAMS, and A. D. Clark, Petitioners,**

v.

**Gayle M. FRANZEN, et al., Respondents.**

**No. 80 C 6578.**

United States District Court, N. D. Illinois, E. D.

Nov. 3, 1981.

Otis Williams, A. D. Clark, pro se.

Ronald Lee Bell, Asst. Atty. Gen., Chicago, Ill., for respondents.

MARSHALL, District Judge.

Petitioners, Otis Williams and A. D. Clark, proceeding pro se, seek habeas corpus relief from an Illinois criminal conviction, pursuant to 28 U.S.C. § 2254 (1976). Respondent, the Illinois Director of Corrections, has answered the petition and moved for summary judgment pursuant to Rule 56, Fed.R.Civ.Pro. Petitioners have responded with a cross motion for summary judgment. The motions have been briefed and are ready for decision.

## I.

Petitioners were tried and convicted by a jury in Kankakee County Illinois of burglarizing the P & E Market. The trial judge sentenced them to terms of five to twenty years imprisonment. Petitioners' convictions were affirmed on appeal. *People v. Clark*, 42 Ill.App.3d 472, 355 N.E.2d 619 (1976). Petitioners assert two grounds for relief in the present action: that their trial counsel was laboring under a conflict of interest which rendered his assistance ineffective in violation of their Sixth Amendment rights, and that the trial court erred in giving Illinois Pattern Instruction 13.21.

The facts of the case and evidence presented at trial are reviewed in the Illinois Appellate Court decision, 355 N.E.2d at 620–21, and need not be repeated here in detail. Petitioners were tried with a third defendant, E. J. Clark ("E. J."), who is not a party to this action. A single court appointed attorney represented all three defendants at trial and a second court appointed counsel represented all three on appeal. The case against the three defendants consisted of testimony placing them in a car filled with meat taken from the market shortly after the burglary took place, the fingerprint identification of Otis Williams and testimony of the police chief that he saw a large quantity of meat at the home of A. D. Clark ("A.D."). The prosecution also introduced Williams prior judicial admission which had been given in a related criminal proceeding.[1]

The petitioners did not testify at trial and their attorney presented no evidence in their behalf. Counsel did, however, put co-defendant E. J. Clark on the stand. E. J. claimed that he was not present at the burglary and only became involved after the fact. The substance of his testimony was that he was walking home from a friend's house and was picked up by petitioners Williams and A. D. Clark (E. J.'s brother) and that "[o]nce inside the car he noticed it was full of meat." 355 N.E.2d at 621.[2] There was, of course, no cross-exami-

---

1. The admission, which came during the course of Williams' trial for a murder stemming from the burglary in question here, also implicated petitioner A. D. Clark. However, all references to petitioner Clark were stricken from the transcript which was read to the jury. (R. 346–350).

2. Counsel's examination of E. J. Clark covers some sixteen pages of transcript (R. 356–369, 391–393). The entire thrust of the examination was to establish that E. J. Clark entered a car driven by Otis Williams and A. D. Clark only after the other two defendants had already completed the crime in question:

 Q. All right, and when you ran into Otis Williams and A. D. Clark, what were they doing?
 A. They was driving around.
 Q. They were driving a car?
 A. Yes, sir.
 Q. And what—was there a conversation between you?
 A. There was a conversation between us.

 Q. What did they say to you and what did you say to them?
 A. Asked me where I was going and I told them I was goin' home.
 Q. Did they say anything else?
 A. Told me to get in.
 Q. Come on and get in?
 A. Yes.
 Q. Did you?
 A. Yes, I got in.
 * * * * * *
 Q. All right, now, on the way while they were driving you was there any conversation that took place between you?
 A. Yes, I asked them where they get the stuff at that was in the car (sic).
 Q. What stuff is that now?
 A. The meat.
 Q. You saw some meat. What did they answer?
 A. They told me none of my business.
 (R. 361–363). We reiterate in order to keep the record clear that the above questions were

nation or impeachment on behalf of petitioners since it was their counsel who elicited the testimony from E. J. on direct examination.

On appeal, all three defendants complained that the jury instruction, IPI 13.21, cited above was prejudicial and E. J. and A. D. Clark raised separate claims based on ineffective assistance of counsel.[3] The Appellate Court reversed as to E. J. Clark, holding that the conflict between his defense and that of his co-defendants rendered their joint representation constitutionally inadequate,[4] but affirmed as to Williams and A. D. Clark. The court rejected the jury instruction claim as to all of the defendants, holding the instruction was not properly objected to at trial or during post trial motions and was therefore waived. *Id.* at 623.

In deciding the ineffectiveness of counsel claim, the Illinois court relied on the standard set out in *People v. Morris*, 3 Ill.2d 437, 121 N.E.2d 810 (1954), that in order to establish a constitutional violation a defendant must show "(1) actual incompetence of counsel, as reflected by the manner of carrying out his duties at trial, and (2) substantial prejudice resulting, without which the outcome probably would have been different." 355 N.E.2d at 621. The court rejected the argument advanced on behalf of A. D. Clark that joint representation with a defendant who placed him leaving the scene of the crime with the stolen goods in hand created a Sixth Amendment problem. The court stated:

> As to A. D. Clark, however, while he was prejudiced by the testimony of E. J. Clark, that the station wagon was full of meat when Williams picked E. J. Clark up, it was doubtful, on the basis of the

record, that without such testimony the outcome as to A. D. Clark could have been any different.

\* \* \* \* \* \*

When all the evidence is reviewed on this issue, it is doubtful whether the admittedly prejudicial testimony of E. J. Clark was sufficiently prejudicial that it could be said that the outcome would have been different. We, therefore, conclude, as to A. D. Clark, that no sufficient prejudice is shown.

*Id.* at 623.

## II.

■ Petitioners claim that joint representation of all three defendants by a single attorney denied them their Sixth Amendment right to effective assistance of counsel. The problems which attend the multiple representation of criminal defendants have received considerable attention from the Supreme Court. *See Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Every criminal defendant has the right to the effective assistance of counsel. The "mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters." *Holloway v. Arkansas, supra* 435 U.S. at 490, 98 S.Ct. at 1181. It is clear, however, that multiple representation is not a *per se* Sixth Amendment violation. The Court has recognized that "joint representation [may be] a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack."

---

asked by counsel who represented both E. J. Clark and these petitioners during the trial.

**3.** The question of waiver of the ineffectiveness claim by petitioner Otis Williams is dealt with at pp. 297–299 *infra*.

**4.** The conflict asserted by E. J. Clark stemmed from the confession of Otis Williams. Since Williams implicated only A. D. Clark in his confession, and made no mention of E. J., the court reasoned that it would have been in the

best interest of E. J. to have the entire statement read to the jury. However, since the statement was inadmissible as to A. D., *see Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), it was only read in part. The conflict rendered the joint representation prejudicial as to E. J. Clark and the Illinois court reversed and remanded. *People v. Clark, supra*, 355 N.E.2d at 622.

*Glasser v. United States, supra* 315 U.S. at 92, 62 S.Ct. at 475 (Frankfurter, J. dissenting) *quoted in Holloway, supra* 435 U.S. at 482–83, 98 S.Ct. at 1177. Where, as in this case, defense counsel does not assert conflicting interests as a basis for severance or the appointment of separate counsel, the court is under no obligation to conduct a *sua sponte* inquiry into potential conflicts which might not present themselves at trial. *Cuyler, supra; United States v. Mandell,* 525 F.2d 671 (7th Cir. 1975), *cert. denied* 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 637 (1976). The Supreme Court in *Cuyler* followed the rationale advanced by this and other circuits that the primary responsibility for recognizing and eliminating conflicts of interests rests with the defense counsel and not the trial court.[5]

 Neither, however, does trial counsel's failure to seek a severance or separate counsel preclude petitioners from asserting their Sixth Amendment claim on appeal or collateral review. Rather, the consequence of counsel's failure to recognize an impermissible conflict prior to trial is to increase a petitioner's burden in establishing an ineffectiveness claim in a collateral proceeding. While the mere assertion of a conflict at trial, followed by failure of the trial court to grant separate counsel, might require reversal, *see Holloway, supra* 435 U.S. at 485–87, 98 S.Ct. at 1179–1180, absent a trial objection the petitioner must establish an "actual conflict of interest adversely affecting his lawyer's performance." *Cuyler, supra* 100 S.Ct. at 1718. A mere potential conflict, which may not have surfaced at trial, is insufficient. *Id. See also, United States ex rel. Robinson v. Housewright,* 525

F.2d 988 (7th Cir. 1975); *United States v. Mandell, supra; United States v. Jeffers,* 520 F.2d 1256 (7th Cir. 1975), *cert. denied* 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976). It is part of the defendant's burden on appeal or collateral review to identify with a reasonable degree of specificity the source and nature of the conflict. *Mandell, supra* at 677–78.

 In the case at bar, petitioners have met their burden. As indicated earlier, petitioner's co-defendant, E. J. Clark, represented by common counsel, testified on direct examination that he came upon petitioners shortly after the burglary had taken place riding in a car carrying goods stolen from the market. In any case where two or more defendants have inconsistent stories relating to the crime charged, joint representation is impermissible. *See Turnquest v. Wainwright,* 651 F.2d 331 (5th Cir. 1981). This is particularly true where one of the defendants is prevented by counsel from taking the stand because of possible prejudice to a co-defendant, or counsel is precluded from cross-examination or impeachment because of conflicting loyalties. *See Ross v. Heyne,* 638 F.2d 979 (7th Cir. 1980); *United States v. Gaines,* 529 F.2d 1038 (7th Cir. 1976).[6]

The Illinois Appellate Court did not deny that petitioners established an actual conflict or that the conflict proved detrimental to their case. It denied relief, however, because it found, "it is doubtful whether the admittedly prejudicial testimony of E. J. Clark was sufficiently prejudicial that it could be said that the outcome of the trial without such testimony would have been different." 355 N.E.2d at 623. In so holding the Illinois Appellate Court relied upon

---

5. See *United States v. Kidding,* 560 F.2d 1303, 1310 (7th Cir.), *cert. denied* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977). See also, ABA Code of Professional Responsibility, DR 5–105, EC 5–15 (1969); ABA Project on Standards for Criminal Justice, The Defense Function § 3.5(b) (1974).

6. In *Ross,* the Seventh Circuit reversed the denial of habeas relief where counsel was prevented from thoroughly cross-examining a prosecution witness who was represented by counsel's partner in practice. As Judge Bauer recognized, "The problem that arises when one

attorney represents both the defendant and the prosecution witness is that the attorney may have privileged information obtained from the witness that is relevant to cross-examination, but which he refuses to use for fear of breaching his ethical obligation to maintain the confidences of his client." 638 F.2d at 983. We believe that conflict is even more acute where, as here, counsel puts on one client in his case in chief and has him testify directly contrary to the interests of his other clients in the same proceeding.

an improper legal standard which denied petitioners their right to effective assistance of counsel. Thus, this is not a case in which we disagree with any of the factual findings made by the state court. Rather, accepting the state's determinations on the facts and presuming them to be correct, *see Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), we believe an application of proper constitutional standards requires the judgment against petitioners be set aside.

■ It appears that the court relied upon a variant of the harmless error rule[7] normally applied by Illinois courts in ineffectiveness of counsel cases.[8] However, the Supreme Court stated long ago that where a conflict of interest is present "[t]he right to [effective] assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States*, 315 U.S. at 76, 62 S.Ct. at 467. The need for counsel who can act effectively on a defendant's behalf is "among those constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Holloway, supra* 435 U.S. at 489, 98 S.Ct. at 1181; *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). The absence of counsel who can provide undivided loyalty to the client deflects the fact finding process in a way that makes it impossible to determine the degree of harm occasioned by the error. *See Holloway, supra* 435 U.S. at 490–91, 98 S.Ct. at 1181. In the instant case we cannot tell, and we decline to speculate, how the presence of counsel to cross-examine or impeach E. J. Clark, or engage in any other activity which may have been prevented by the conflict demonstrated, affected the outcome of the trial. Instead, we rely on the principle, most recently restated in *Cuyler v. Sullivan*, that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." 100 S.Ct. at 1719.

■ Respondent asserts that petitioner Williams has waived any claim based on

7. Even if this were a case where the harmless error rule applied, we doubt whether the standard as formulated by the Illinois court in this case would be appropriate. As quoted *supra* the court appeared to place on the defendant the burden of establishing that the "outcome would have been different" without the damaging testimony of their co-defendant. As we understand it, the state must bear the burden of establishing that there is no "reasonable possibility that the evidence complained of might have contributed to the conviction," and that the court is able to declare "it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 23, 24, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). See also *Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

8. We hasten to add that we do not, by this opinion, suggest that the long standing test applied by Illinois courts to ineffectiveness claims is unconstitutional. See *People v. Morris*, supra. See also, *People v. Goerger*, 52 Ill.2d 402, 288 N.E.2d 416 (1972); *People v. Lewis*, 89 Ill.App.3d 840, 45 Ill.Dec. 214, 412 N.E.2d 565 (1980); *People v. Edmonds*, 79 Ill. App.3d 33, 34 Ill.Dec. 555, 398 N.E.2d 230 (1979).

What standards should be applied in determining general claims of attorney incompetence under the Sixth Amendment, and wheth-

er a showing of prejudice should be a required part of that claim, has engendered a great deal of debate and disagreement. Compare, *United States v. Decoster*, 624 F.2d 196 (D.C.Cir.1979) (en banc) (*Decoster III*); *Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978) (en banc), cert. denied, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979); *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977), cert. denied 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978); *United States ex rel. Williams v. Twomey*, 510 F.2d 634 (7th Cir.), cert. denied, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975); *Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974); *Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974). The Supreme Court has not yet spoken on the issue. See *Marzullo v. Maryland*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978) (White, J., dissenting from denial of cert.); cf. *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

What is clear, however, is that the general standards applied by the Illinois courts in the cases cited are *not* appropriate where the claim is that an actual conflict of interest rendered effective assistance impossible. In such a situation the cases cited above indicate that questions as to the amount of prejudice caused have no place in the decision regarding the presence of a Sixth Amendment violation.

multiple representation because his trial counsel failed to raise the argument on appeal.[9] It is true that petitioners' appellate counsel, in a cryptic footnote,[10] decided not to raise the ineffectiveness issue as to Williams. We hold, however, that on the facts and circumstances of this case, failure to advance this argument on appeal does not amount to a waiver which precluded Williams from asserting his Sixth Amendment claim in this action.

The touchstone for determining whether a habeas petitioner has lost his right to a review of the merits in federal court is *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In *Sykes* the Court completed a process of gradual erosion of the "deliberate bypass" standard established in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and limited a petitioner's ability to argue constitutional error for the first time on habeas review.[11]

At issue in *Sykes* was a petitioner's right to contest the admissibility of his confession after failing to meet the state's contemporaneous objection rule at trial. In re-evaluating the deliberate bypass test of *Fay*, the Court focused on several reasons why state court rules were entitled to greater deference in federal court than had previously been given. Contemporaneous objection rules serve several valuable purposes: they allow a single comprehensive record to be made, facilitating appellate review; they enable the trial judge to apply important factual observations to decisions about the admissibility of evidence; they contribute to the finality of the judgment; and they confront the prosecutor with the possibility that the evidence is tainted and may not be admitted. *Wainwright v. Sykes, supra* 433 U.S. at 87–89, 97 S.Ct. at 2506. Moreover, the Court was concerned that permitting constitutional arguments for the first time on habeas review might encourage "sandbagging" by defense counsel and promote strategic delay before ultimate resolution of a defendant's claims. *Id.* at 89, 97 S.Ct. at 2507. Finally, considerations of comity and federalism require respect for state procedural rules which meet the requirements of due process and serve legitimate state judicial goals. *Id.*

The decision in *Sykes* does not require that non-compliance with every state procedural rule bars a federal decision on the merits. In *Guzzardo v. Bengston*, 643 F.2d 1300, 1305 (7th Cir. 1981), the Seventh Circuit held that the *Sykes* considerations do not apply where a petitioner failed to raise an ineffectiveness claim on direct appeal.

The procedural bar raised by the State in the instant case is different from the contemporaneous objection requirement asserted in *Francis* and *Sykes*. An ineffective assistance of counsel claim is by its very nature a post-trial assertion. It can be argued that a State's rule governing post-trial procedures is entitled to the same deference by Federal Courts as a State contemporaneous objection rule. Nevertheless, such a holding would clearly be an extension of *Francis* and *Sykes* which we decline to undertake in this case. We believe the District Court correctly decided the ineffectiveness assistance of counsel claim on the merits. 643 F.2d at 1304.

In following the lead of the Seventh Circuit, we note that the instant case would be

---

9. Respondent's brief cites no authority on the waiver issue with the exception of a surprising reference to *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Rather than rely on *Fay*, which for the purposes of this case would appear to be overruled, we proceed to analyze the waiver issue under the more recent opinion of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and its progeny.

10. Petitioner's Appellate Brief at 8, n. 1:
This issue is not raised as to defendant/appellant Otis Williams because it does not appear that, due to the introduction of his prior judicial confession he was substantially

prejudiced by defense counsel's conflict of interest.

11. See e.g., *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); *Tollet v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). See also, Tague, Federal Habeas Corpus and Ineffective Representation of Counsel: The Supreme Court Has Work To Do, 31 Stan.L.Rev. 1 (1979).

a particularly inappropriate vehicle for application of the rigorous cause-prejudice standard advanced in *Sykes*. Petitioner Williams' claim of ineffective assistance is exactly the same as petitioner Clark's. Both were represented by the same attorney and it was that attorney who elicited the harmful testimony from co-defendant E. J. Clark. The conflict which rendered Williams' counsel ineffective is precisely the same as that which compels us to set aside the conviction of A. D. Clark. Thus, this is not a case where the state system was in any way deprived of the opportunity to analyze the constitutional question in the first instance. There are no facts relevant to Williams' constitutional claim which have not already been considered and ruled on by the Illinois Appellate Court in *People v. Clark, supra*. We discern no general state purpose or rule which would be furthered by precluding Williams from raising a serious constitutional error which goes to the fundamental fairness of the trial where the state has made a de facto ruling on the claim in spite of counsel's failure to formally raise the argument as to one of two clients. *See Gale v. Harris*, 450 F.Supp. 375, 377 (S.D.N.Y.1978).

■ In addition, the Illinois Appellate Court in the instant case did not simply rely on counsel's waiver; it chose to comment on the merits of petitioner Williams' claim:

It should be noted that, on appeal, counsel for defendants do not argue that the error as claimed warrants reversal as to defendant Williams. As appellate counsel admits, by reason of the prior judicial confession by Williams, it does not appear that the Williams' case was substantially prejudiced by counsel's alleged incompetence.

355 N.E. at 622. Thus, the court indicated that it applied the same impermissible standard to Williams' claim as it did to A. D. Clark's, by requiring a showing of "prejudice" beyond establishing an actual conflict

of interest which affected the course of the trial. We hardly think it appropriate to punish petitioner and his appellate counsel for recognizing the inevitable and failing to argue against a long standing and oft applied state standard. *See* n. 8 *supra; compare, Bromwell v. Williams*, 445 F.Supp. 106, 111–14 (D.Md.1977). The "waiver" alleged in this case raises none of the legitimate concerns outlined in *Wainwright v. Sykes*, and did not, in fact, prevent the state court from ruling on the merits of Williams' claim. Where the state court goes beyond an alleged waiver and gives its opinion on the merits, the cause-prejudice standard need not be met. *See Blackburn v. Thomas*, 450 U.S. 953, 1414, n. 2, 101 S.Ct. 1413, n. 2, 67 L.Ed.2d 380 (1981) (Powell, J., dissenting from denial of cert.); *County Court of Ulster v. Allen*, 442 U.S. 140, 152–53, 99 S.Ct. 2213, 2222, 60 L.Ed.2d 777 (1979); *Franks v. Delaware*, 438 U.S. 154, 161–63, 98 S.Ct. 2674, 2679, 57 L.Ed.2d 667 (1978); *Thomas v. Blackburn*, 623 F.2d 383, 386 (5th Cir. 1980), *cert. denied*, 450 U.S. 953, 101 S.Ct. 1413, 67 L.Ed.2d 380 (1981).

■ Respondent's final argument, not supported by any citations to authority or the factual allegations necessary to sustain it, is that the petition in this case is barred by Rule 9(a), 28 U.S.C. § 2254 rule 9(a).[12] That rule grants the court discretion to apply the equitable doctrine of laches if the petition comes after an unwarranted delay by petitioner. *See Baxter v. Estelle*, 614 F.2d 1030, 1033 n. 2 (5th Cir. 1980); *Paprskar v. Estelle*, 612 F.2d 1003, 1007 (5th Cir. 1980); *Davis v. Adult Parole Authority*, 610 F.2d 410, 415 (6th Cir. 1979). The rule should be construed liberally to permit full use of the federal court's habeas power, *Davis, supra* at 415, and requires the state to establish that it is prejudiced in its ability to respond by reason of the delay. *Mayola v. Alabama*, 623 F.2d 992, 999 (5th Cir. 1980); *Mixon v. United States*, 608 F.2d

12. The text of the rule is as follows:

(a) Delayed Petitions. A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its filing unless the petitioner shows that it is based on the grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

588, 591 (5th Cir. 1979). Prejudice is not presumed and the state must at least allege some facts supporting its claim. *Mayola, supra; Mixon, supra.* The state has presented no factual question as to prejudice in its ability to respond to the petition caused by the delay between exhaustion of state remedies and this filing. Rule 9(a) does not warrant dismissal of this petition.

### III.

The second claim raised by the petitioners is that they were prejudiced when the Illinois trial court gave Illinois Pattern Instruction 13.21 to the jury.[13] The Illinois Appellate Court found that petitioners had failed to object properly to the giving of the instruction at trial and did not raise the issue as in any of petitioners' post-trial motions. 355 N.E.2d at 623. The court thus clearly could treat any objection on appeal as waived. *Jacks v. Duckworth,* 651 F.2d 480, 485 (7th Cir. 1981); *Pharr v. Israel,* 629 F.2d 1278, 1280–81 (7th Cir. 1980); *Blenski v. LaFollette,* 581 F.2d 126, 129–30 (7th Cir. 1978). Petitioners have alleged no facts establishing either "cause" for the failure to object on the grounds now argued or "prejudice" resulting from the alleged error and thus the argument may not be considered on habeas review. *Wainwright v. Sykes, supra; Blenski, supra.*[14]

For the reasons stated herein, summary judgment is granted to the petitioners on their claim of ineffective assistance of counsel and for the respondent on the alleged

13. The text of the instruction given is as follows:
> If you find that the defendant[s] had exclusive possession of recently stolen property, and there was no reasonable explanation of their possession, you may infer that defendant[s] obtained possession of the property by burglary.

14. We note that here too the Illinois court chose to rule on the merits of petitioners' claim on appeal as well as finding a waiver. The issue, unlike the claim of ineffective assistance of counsel, is one that should properly have been addressed to the trial court. Thus, the comment on the merits on appeal does not vitiate the harm done by failure to abide by the state procedural rule. The principle that a ruling on the merits negates the impact of a proce-

due process-instruction violation. The judgment of conviction of the Circuit Court of Kankakee County Illinois finding petitioners Otis Williams and A. D. Clark guilty of burglary in cause number 74 CF 1808 is set aside.

dural default may, therefore, not apply here. Cf., *Pharr v. Israel,* 629 F.2d at 1280.

In the event that this ruling by the state court does eliminate the need to meet the *Sykes* standards and permits our review on the merits, we agree with the opinion in *People v. Clark* that the instruction at issue does not violate petitioners' due process rights. The instruction does not create a mandatory presumption and the permissible inference it allows the jury to draw is adequately supported by the evidence as found by the state court and the record presented for review. See *County Court of Ulster,* 442 U.S. at 156–160, 99 S.Ct. at 2224; *Turner v. United States,* 396 U.S. 398, 417–19, 90 S.Ct. 642, 652–653, 24 L.Ed.2d 610 (1969); *People v. Whittaker,* 45 Ill.2d 491, 259 N.E.2d 787 (1970).